MANN (UNITED STATES v.). See Cases Nos. 15,716, 15,717, and 15,718.

---

## Case No. 9,036.

### MANN et al. v. WILKINSON et al.

[2 Sumn. 273.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1835.

PRACTICE IN EQUITY—AFTER DECREE—RETAINED FOR FUTURE PROCEEDINGS—MILL DAM.

1. A bill of equity, after a decree, in certain cases may be retained for further future proceedings; but, in the case of an alleged violation of a water privilege, it will not be retained, in order to give the plaintiffs an opportunity, by new trials and proofs, to establish the fact, that a further lowering of the dam of the mill of the defendants is necessary to the protection of their rights.

[Cited in Ronayne v. Loranger, 66 Mich. 375, 33 N. W. 841.]

2. Quaere: Whether, under the mill act of Rhode Island, a mill-owner may raise his dam, so as to affect any water privilege or dam already on the stream, and above his own mill.

This was a bill in equity [by Samuel F. Mann and others] for an abatement of a nuisance to the cotton mills of the plaintiff, situate on the Blackstone river, by the defendants [George Wilkinson and others], by raising the dam of a mill, called the "Albion Mill," lower down on the stream, and thereby flowing back the water upon the plaintiff's mill-wheel. At a former hearing the court made an interlocutory decree, by which the cause was referred to a master. The master made his report at the last June term of the court; to which exceptions were taken

---

1 [Reported by Hon. Thomas Bee, District Judge.]

1 [Reported by Charles Sumner, Esq.]

by both parties. The cause was afterwards argued upon the exceptions.

R. W. Greene and D. Webster, for plaintiffs. Pratt & Whipple, for defendants.

STORY, Circuit Justice. On full consideration of all the exceptions taken by the parties, we are of opinion, that they ought all to be overruled, and the report of the master ought to be confirmed. We do not propose to give an elaborate opinion upon all the matters of the exceptions, as they would not be very intelligible without going at large into all the various topics asserted in the arguments at the bar, which would occupy too much time. It is sufficient to say, that we have most deliberately weighed them all; and are satisfied, that no one of them, with reference to the pleadings, and the actual posture of the case, is maintainable.

There are two points, however, upon which a few words may be proper to be said, in order to explain the final decree of the court. We think, that the proof stated by the master conclusively establishes the fact, that the dam of the Albion mill ought to be lowered two feet, in order to restore the plaintiffs to their rights as riparian and mill proprietors. The plaintiffs have asked, that the bill might be retained; so that the dam might be still further lowered, if upon future trials and proofs they can establish the fact, that there is a necessity of so doing, to protect and sustain their existing rights. But if the bill should be so retained, there must be a reciprocity on the other side. And the defendants ought to be let in to establish, by future trials and proofs, that the dam has been directed to be lowered beyond what the plaintiffs' rights required. What would this be, but to try the whole cause de novo on both sides, upon new proofs after publication? Such a course is, in our judgment, incompatible with the known course of practice and principles of courts of equity; and would open a door to interminable litigation. The very object of courts of equity, to put an end to controversies, would be defeated. We entertain no doubt, that in suitable cases, bills of equity may be retained after a decree for further future proceedings. But the present is not one of that sort.

One argument of the defendants is founded upon the existence of the old Eel dam, as an obstruction to the plaintiffs' rights; and it is said, that the defendants are entitled to the benefit of such obstruction, to its full extent, in flowing back the water upon the plaintiffs' mills; that is to say, to the extent of six inches, as it is intermediate in the stream between the Albion mill dam and the plaintiffs' mills. The effect of this would be to require the Albion dam to be lowered only eighteen inches instead of two feet. The court are of opinion, that the state of the pleadings does not raise the question, whether that Eel dam is to be treated as pro tanto a permanent ob-

struction of the plaintiffs' rights, as mill proprietors, or as a mere obstruction at the sufferance of the plaintiffs and the other riparian proprietors. The defendants have not asserted, that they have acquired any title to the Eel dam by any conveyance or transfer of the proprietors thereof. Nor have they averred, that they have acquired any right to the same by operation of law, by a flowage of the same under the mill act of Rhode Island. And the decree of the court ought to be founded upon the allegata, as well as the probata. These points, not being put in issue, are of course not properly matters in proof. If it had been averred in the pleadings, and established in proof, that the plaintiffs set up such a right to the Eel dam by flowage, under the mill act of Rhode Island, then a very important question might have arisen, whether, under that act, it was competent for any mill owner to raise his dam so as to flow back upon and affect any water privilege, or dam, already in existence across the stream above his mill; or whether the right of flowage is confined to cases, where no dam is erected, or in the course of erection, and the only flowage is to mere land. Upon this question we give no opinion; because the pleadings do not raise it; and as the defendants set up no title to the Eel dam, they cannot protect themselves under it, as an obstruction, in aid of the rights of the Albion mill proprietors.

Another point arises: The master's statement in the close of his report is, that flashboards might, at certain seasons of the year, be erected on the Albion dam, sixteen inches and one half inch, without injury to the plaintiffs' rights. We are of opinion, that this is not a matter before us upon the present bill; and we shall, in framing the final decree, reserve to the parties all their rights respectively upon this point. If the master's report were confirmed in this particular, it might give rise to the suggestion, that the court had conferred a right on the defendants to raise such flash-boards in such seasons. If, on the contrary, the court disaffirmed this part of the master's report, it might be conclusive against the defendants. The decree will be so framed as to escape both of these inconveniences; and will leave the parties to the assertion of their rights respectively, in regard to flash-boards, hereafter, as they may be advised.

These are all the explanations, which the court deem it necessary to make upon the present occasion. The master's report is to stand confirmed, and the decree of an abatement of the Albion dam two feet, and a perpetual injunction will be consequent thereon.

This cause came on again to be heard upon the master's report, and the exceptions taken thereto by the parties respectively, and was argued by counsel. On consideration whereof it is ordered, adjudged and decreed by THE COURT, that the exceptions of the said

parties respectively be, and the same are hereby overruled, and that the said report do stand in all matters confirmed except as hereinafter stated. And it not appearing by the answers of the defendants, that they assert any right or title to the Eel dam, in the said answers stated, under the owners thereof, by operation of law or otherwise, nor what the true nature and extent of the right and title of the said owners of said Eel dam was, and is;—it is, thereupon, further ordered. adjudged and decreed, that the said Albion dam in the said pleadings mentioned, ought to be reduced from its height at the time of the filing of the plaintiffs' bill, the space of twenty-four inches from the top thereof, as a nuisance to the privileges and mills of the plaintiffs in the same bill mentioned, and in violation of their rights thereto; and the said defendants are hereby ordered to abate and reduce the same Albion dam the said twenty-four inches accordingly, within forty days from the entering of this decree. And it is further ordered, adjudged and decreed, that the said defendants, their heirs and assigns be, and they hereby are, perpetually enjoined, after the same Albion dam is so abated and reduced as aforesaid, never thereafter to raise the same dam above the level, to which the same shall be so abated and reduced as aforesaid. And it is further ordered, adjudged and decreed, that a writ of injunction do issue forthwith against the defendants, commanding them to comply with all and singular the premises so enjoined upon them. And inasmuch as it appears from the master's report, that in low states of the river, when it is not obstructed by snow and ice, the defendants might, without injury to the plaintiffs, put flash-boards on their dam sixteen inches and one half wide, and the same keep up, until the water in the river flows over the top of them with their present mill gates drawn, and it is not the intent of the court, in any manner, to act upon this part of the said report, but to leave the parties respectively to their respective rights in regard thereof in the same manner, as if the same were not stated in the same report. It is further ordered and declared. that no part of this decree is to be construed in any manner to affirm or deny the right of the defendants to put up such flash-boards; but the parties are left to their respective rights in the premises, as if the same were not stated in the report. And it is further ordered and decreed, that the plaintiffs do recover their costs in the premises.