JAMES RONAYNE ET AL. v. JOSEPH LORANGER.

*Nuisance—Maintenance of mill-dam—Equity.*

Complainants filed a bill to abate a mill-dam, maintained by defendant on land owned by him, as a nuisance, he having acquired the right of flowage, by express grant, of all the lands overflowed by reason of the dam, except the overflow in times of high water, which then extended beyond his right. The dam had been erected and maintained for more than 60 years, and used for ponding water for running a saw-mill. The case was heard upon pleadings and proofs in the court below, and the relief asked for in the bill granted. The testimony was not returned on appeal.

*Held,* that the bill should have been dismissed, for the *reason* that the defendant ought to be permitted to hold and enjoy his property until it is taken from him by the verdict of a jury, or some express statutory proceeding warranted by the Constitution of this State, and for the further reason that the rights of the complainants can be adjudicated and enforced at law as well as in equity.

Appeal from Monroe. (Joslin, J.) Argued June 7, 1887. Decided June 23, 1887.

Bill to abate a nuisance. Decree granting relief prayed for reversed, without prejudice to right of complainants to pursue their remedy at law, if one exists. The facts are stated in the opinions.

*I. R. Grosvenor* and *A. B. Bragdon,* for complainants.

*Gouv. Morris,* for defendant.

MORSE, J. It appears that the dam sought to be destroyed and enjoined as a nuisance in this case has been in existence as it is for over 60 years. There is no showing how long any of the complainants have held the lands which are claimed to be injured by this dam, except the allegation that they have

occupied the same for several years last past before the filing
of the bill of complaint. The dam is upon the property of
the defendant, as is also the mill-pond formed by the same.
It would also seem that he has acquired the right of flowage
by express grant of all the lands overflowed by reason of said
dam, except the overflow in times of high water, which then
extends beyond his right.

I do not think it would be equitable to destroy this man's
property and means of livelihood in a proceeding of this kind.
He ought to be entitled to a jury trial, and I think our
laws contemplate that he shall have it. These parties com-
plainant in all probability bought their lands with this dam
in existence, and in view of them, knowing the extent and
character of its unhealthful features and influences. If so,
they are not entitled to the same equitable considerations
that would prevail had the defendant created this alleged
nuisance after they had acquired and settled upon their
respective premises.

If this dam is a public nuisance, it is the subject of indict-
ment, and this would give the defendant an opportunity to
defend his right to hold and use his property before a tribu-
nal of his peers. Our statutes also authorize township
boards of health, in proper proceedings, to destroy, remove,
or prevent nuisances in certain cases. How. Stat. §§ 1640–
1642.

It is alleged in the bill that the township board of French-
town, in which township this dam is situated, have refused
to declare it a nuisance. This would seem to indicate that
there is, at least, a difference of opinion as to the malarious
character and effect of this dam. Individuals aggrieved by
a private nuisance may proceed against the same in an action
on the case. If the plaintiff in such action prevails, the
court has power to abate and remove the nuisance. How.
Stat. §§ 1680, 7961, 7962.

Without considering the other points raised in the case by

the counsel for the respective parties, I think the bill of complaint should have been dismissed in the court below, for the reason that the defendant ought to be permitted to hold and enjoy his property until it is taken away from him by the verdict of a jury, or some express statutory proceeding that is warranted by the Constitution of our State, and for the further reason that the rights of the complainants can be adjudicated and enforced at law as well as in equity. The right to the beneficial enjoyment of their property can be settled and determined in a court of law just as completely and effectively as in this proceeding, and at the same time the defendant loses no substantial right or benefit in making his defense. I *therefore* hold that the decree of the court below should be reversed, and the complainants left to pursue, without prejudice, their action at law to right their wrongs, if any exist.

CAMPBELL, C. J. I concur in the views of my Brother MORSE. I think, further, that no case is made which would allow complainants to join in the suit, which is multifarious.

CHAMPLIN, J. I have no doubt of the jurisdiction of the court of equity, in a proper case, not only to determine the question whether a nuisance in fact exists, but to make a decree that it be abated; but in such a case it must clearly appear that the complainant has title to the water-course, or the land under it, if it be a water course that is complained of, and that the nuisance is made out. *Earl v. De Hart*, 12 N. J. Eq. 280, 287; *Van Bergen v. Van Bergen*, 2 Johns. Ch. 272 ; *Hammond v. Fuller*, 1 Paige, 197; *Mann v. Wilkinson*, 2 Sum. 273; *Farnum v. Blackstone Canal Co*, 1 Id. 46; *Hill v. Sayles*, 12 Cush. 454, 457; *Sheldon v. Rockwell*, 9 Wis. 166; *Ackerman v. Horicon, etc., Co.*, 16 Id. 154; *Wilmarth v. Woodcock*, 58 Mich. 482; *Wilmarth v. Woodcock*, *ante*, 331.

Such is not the case here. The mill-dam, which is com-

plained of as the cause of the nuisance, is upon defendant's land, and he has deeds for the right of flowing all lands which the mill-pond covers. This dam has been erected and maintained for more than 60 years, and has been in use for that time in ponding water for running a saw-mill.

It may be conceded that, upon general principles, security against all causes injurious to health and bodily comfort is essential to human happiness; and those acts of individuals which produce injury to health, or which seriously interfere with bodily comfort, may, as a general rule, be prohibited. At the same time it is evident that it is not every annoyance to health and comfort which constitutes a nuisance. This right of security to health and comfort is not absolute in a state of organized society. It must give way to the reasonable demands of trade, commerce, and the other vital interests of society; and in most cases of nuisances, or alleged nuisances, affecting personal health and comfort, there is involved the question of what constitutes a reasonable use of one's property, which is one of fact, and the answer varies according to the circumstances of each case. And here is where the case of the complainants fails in an important particular. The testimony showing the facts relied upon to constitute the nuisance is not returned to this Court.

In equity cases this Court acts as an appellate tribunal, and our duty requires us to weigh the testimony, and from it determine the facts. No conclusions found by a circuit judge are either binding or conclusive upon us. We are bound to act upon our individual conscience, and such action must be based upon the testimony in the case. In the record filed here we are apprised that testimony was taken both in open court and by deposition, none of which is returned. A record of an indictment and conviction on a plea of guilty had nearly 30 years ago is the only evidence placed before us, by which the mill dam and pond in question, belonging to defendant's ancestor, was adjudged a nuisance, he fined $15,

and ordered to clean it out; but no order was made to abate or remove the dam, except that, until the order to cleanse it was complied with, the water should be drawn down so as to pass unobstructed in its accustomed channel. That is too remote to prove that the defendant is now maintaining a nuisance, and that the health and comfort of complainants are affected by the maintenance of the mill-dam as it exists at this time.

It is claimed that the case of *Wright v. Dudley*, 8 Mich. 74, is an authority for bringing the record to this Court without returning the testimony, and that this Court is bound by, and must act upon, the finding of facts stated in the decree. That case affords no countenance for such position. That case holds that if an appeal is taken, and neither party insists upon the proofs being returned to this Court, but go to hearing, it will stand for hearing upon the pleadings, and it will devolve upon the appellant to show that the decree is not warranted by the pleadings. The appellant does show by his answer that the decree was not warranted by the pleadings. He not only denies the allegations that any sickness is caused by the maintenance of the mill-dam, but also all the statements in the bill upon which complainants' equity rests. In such a case there is no presumption that there was evidence below to authorize the decree made.

It has never been held that facts recited or found in a decree are evidence of anything upon a hearing in an appellate court. It is only when a decree is final that facts recited therein are evidence, and then only between the parties and their privies; but a decree appealed from is not final unless it is affirmed by the appellate court.

If the bill of complaint was supported by appropriate proofs, it would then devolve upon us to consider the question of personal health and comfort on one side, and a profitable use of defendant's property on the other, and determine on whom in equity the loss should fall; and in considering

this question the fact, if it was shown to exist, that the boards of health of the townships of Exeter and Ash have adjudged it a nuisance, would have no controlling effect upon us; for the judgment of those boards cannot operate in any respect as a judgment at law would upon the rights involved.

I fully agree with the opinion of Chief Justice Beasley in *Hutton v. City of Camden*, 39 N. J. Law, 122, 130, as applied to the facts of this case, in which he says:

"The use of land and buildings, the enjoyment of water-rights, the practice of many trades and occupations, and the business of manufacturing in particular localities, all fall, on some occasions, in important respects within its sphere. To say to a man that he shall not use his property as he pleases, under certain conditions, is to deprive him *pro tanto* of the enjoyment of such property. To find conclusively against him that a state of facts exists with respect to the use of h s property, or the pursuit of his business, which subjects him to the condemnation of the law, is to affect his rights in a vital point. The next thing to depriving a man of his property is to circumscribe him in its use, and the right to use property is as much under the protection of the law as the property itself in any other aspect is, and the one interest can no more be taken out of the hands of the ordinary tribunals than the other can. If a man's property cannot be taken away from him except upon trial by jury, or by the exercise of the right of eminent domain upon compensation made, neither can he, in any other mode, be limited in the use of it.

"The right to abate public nuisances, whether we regard it as existing in the municipalities or in the community, or in the hands of the individual, is a common-law right, and is derived in every instance of its exercise from the same source,—that of necessity. It is akin to the right of destroying property for the public safety, in case of the prevalence of a devastating fire or other controlling exigency. But the exigency must be present to justify the exercise of the right, and, whether present or not, must be submitted to a jury under the guidance of a court."

For the *reasons* above stated, I concur in a reversal of the decree.

SHERWOOD, J. (*dissenting*). On the fourth day of January, 1886, the complainant James Ronayne and twelve others, as

complainants in behalf of themselves and all others similarly situated and aggrieved who might thereafter desire to come in as such complainants, filed their bill of complaint in the circuit court for the county of Monroe, in chancery, against Joseph Loranger, defendant.   The bill states:

1. That the complainants all reside near Stoney creek, in said county, and between the defendant's mill-dam thereon, in Frenchtown, and a certain school-house in the town of Exeter, and are all owners and occupants of lands and homes along the line of said creek, giving a description of the 'parcel of each, and the number of acres submerged on each parcel by the erection of defendant's dam across said creek.

2. The bill then avers that the defendant occupies and pretends and claims to own a water privilege and mill-dam on said creek in Frenchtown, and that for many years he or those under whom he claims have maintained a dam across the creek at the point known as "Loranger's Mill;" that this dam causes the water to set back in the creek, and upon the lands of complainants, as far, or nearly as far, as said school-house in Exeter; that the banks of the creek are low and marshy, flooded in time of high water, and left bare at other times; that during the summer and autumn the water is usually low, and the marshy banks are generally left bare; that the overflow causes a large growth of vegetation when the water subsides, and that the vegetation is killed when the next overflow comes, and allowed to decay in the water, and which, as the water becomes stagnant, emits noxious vapors and exhalations, which is seriously injurious to the health of the complainants and other inhabitants; that the stagnant water percolates through the soil into the wells of complainants, rendering the water therein a source of disease; and further avers that when the dam was first erected the bottom lands along said creek were covered with a heavy growth of timber, which retarded evaporation, and tended to keep the volume of water in the creek uniform; that said timber has now been largely removed, either by being cleared off or killed by the rising waters, and allowed to fall into the mill-pond, and there allowed to decay; that the change in the natural condition of the volume and flow of the water has become much more variable than formerly, increasing the growth and decay of vegetable and other matter, increasing the malarial and unhealthful influences, and at the same time

has rendered the mill-power irregular and unreliable, rendering it of no public benefit, and of little or no value to the owner.

3. The bill further states that the boards of health of the townships of Ash and Exeter have severally taken action in regard to the unhealthy emanations from said marsh lands and stagnant water caused by the defendant's dam, and have declared the same to be a public nuisance, caused by said dam, but have been unable to secure its abatement by reason of the want of co-operation on the part of the board of Frenchtown.

4. That Edward Loranger, in 1854, was the owner of the mill property and dam, and is the grantor of the defendant, and was indicted by a grand jury of Monroe county for maintaining a nuisance,—said dam; that he pleaded guilty to the indictment, was convicted, and sentenced to pay a fine of $15, and the costs of the prosecution to be taxed, ordered to remove the dead and decayed logs, wood, and other vegetation from the pond and stream, under the direction of the board of health of Frenchtown, and to allow the waters of Stoney creek to flow through its accustomed channel, the same as though the dam had not been erected, and it was also ordered that said dam be removed and kept down. And the bill further avers that the same cause of complaint that then was made, and upon which said conviction was had, exists now; that the order of the court in that case was never complied with, the board of health of Frenchtown refusing or neglecting to act in the premises, and that the said defendant has failed to comply with the order of the court in that case, and that the same public nuisance created by the defendant's dam, with all of its serious and fatal consequences to public health and injury to health of complainants, has continued down to the time of filing complainants' bill; that constantly, as time has passed, filth has continued to increase from year to year, with all the increased injurious consequences to the health of those residing along the bank of the creek.

5. That when complainants appealed in a friendly manner to the defendant to remove his dam, and relieve them from the disease and pestilence occasioned thereby, he informed complainants that they were helpless, that he would do nothing, and he could not be compelled to do anything; and when complainants, or some of them, have called upon the township authorities to relieve them from the terrible nuisance and sickness occasioned thereby, as they have for

years repeatedly done, they neglected to do their duty in the premises.

6. That said dam has been declared a public nuisance by a court of competent jurisdiction, on the plea of guilty by defendant's grantor; that, from the location of complainants' homes, they are more injuriously affected by the nuisance than the other inhabitants of the township, and that no money could afford them adequate or complete remedy for the injury they sustain by the continuance of the dam.

7. That the land bordering upon said pond is so unhealthy that complainants cannot dwell there without serious and increasing injury to their health and that of their families; that the stagnant water and decaying vegetation caused by the defendant's dam render the country about it unhealthy, and the dam is the cause of the increased ill health of complainants and their families.

The bill prays for a decree that the dam be removed, and the creek allowed to flow in its natural and accustomed channel, and that defendant be perpetually enjoined from rebuilding the same, or any other dam, preventing the natural flow of the waters in the creek.

Such is the substance of the complainants' bill, to which the defendant made and filed an answer, in which he either admits or puts in issue every allegation made by complainants.

He denies that the dam causes the water to set back as far in the creek as claimed by the complainants, and avers he owns the right to flow all the land covered by reason of the dam.

He denies that the submerging of the lands on the borders of the creek, and the deleterious results therefrom, are due to the dam, or that flooding the bordering lands, caused by the dam, is the occasion of any unhealthiness to complainants or in the neighborhood; and denies that the neighborhood is unhealthy along the borders of the stream, or that the dam affects the rise and fall of the stream, or that the decay of vegetable matter is in any degree owing to the defendant's dam, and would be remedied by its removal.

He denies that his mill-power is unreliable or valueless; alleges that the removal of the dam would destroy his means of livelihood, and the business of himself and father, carried on for more than 60 years, and cause him great and irreparable loss; denies that the dam is a nuisance.

He admits the proceedings taken against Edward Loranger, but denies that any decree or order has ever been made that said dam should be abated as a public nuisance, and denies that the cause of action in that case was the same as in this, and avers that he has no knowledge of any injurious effects caused by said dam, and denies that any sickness is caused by it, or that complainants suffer any injury therefrom.

He denies that any deleterious malarial influences are caused by the dam, or that residue upon the bottom lands along the creek where lands are overflowed is unhealthy, or dangerous to life, in consequence of his dam.

With a few unimportant exceptions, the remaining answers made to the charges contained in the bill either admit or explain those charges, or disavow knowledge or belief as to the matters stated. The answer, however, avers that the flooding complained of has continued ever since the dam was built, in 1823; that for a period of more than 60 years said dam has been maintained in the same manner, and flooding lands to the same extent, as at present, and defendant claims a prescrip·ive right to maintain his dam and flow the lands as he now does; that the complainants and their grantors have owned property and resided along the creek during the 60 years, and, because of gross laches and acquiescence, are now barred from having any relief they might heretofore have had.

"And the defendant further says that the complainants have not in and by their said bill of complaint made or stated such a case as entitles them in equity to any of the relief therein prayed against this defendant."

The usual replication was filed. The answer contains a

demurrer, without praying any benefit thereof. The printed record in the case contains the pleadings, a few unimportant journal entries, the decree made by the circuit judge in the case, and a certified copy of the proceedings had in one of the cases, wherein the defendant's grantor had been convicted, on his own plea of guilty, of nuisance in maintaining the dam. None other of the evidence, which was taken before a commissioner and in open court, appears in the printed record.

Under the decree of Judge Joslin, before whom the cause was heard, the material facts as stated in the complainants' bill are found to be true, and the learned circuit judge further says in his decree—

"That the stagnant water caused by the defendant's dam on his premises, on section nine (9), in the township of Frenchtown, as stated in said bill, is a cause and source of great sickness to the inhabitants in the vicinity of said mill-pond and stagnant water, and particularly destructive to the health of the complainants, causing greater injury to the health of them and their families than to other persons of said township; and that said stagnant water, caused by said dam, and the decay of vegetation incident thereto, and the pestilential vapors arising from such decay, as stated in such bill of complaint, are detrimental to health and destructive of human life; and that said dam is the cause of such sickness and injury to health and destruction of human life, and of right ought to be abated as a nuisance, and to be kept abated."

And the decree then continues in accordance with the prayer of the bill. The defendant asks a review in this Court.

The demurrer contained in the answer must be regarded as waived; the defendant having put in his proofs and submitted the cause upon the merits. Story, Eq. Pl. § 284; *Wales v. Newbould,* 9 Mich. 81; *Payne v. Avery,* 21 Id. 537; *Ward v. Cooke,* 5 Madd. 122; *Nelson v. Hill,* 5 How. 127; *Abbot v. Johnson,* 32 N. H. 9.

No motion has been made to dismiss the appeal taken in

this case. Parties may submit a case without the testimony being presented, as has been done here, but under such circumstances it will necessarily devolve upon the appellant to show that the decree at the circuit is not warranted by the pleadings; the presumption being that in the court below there was evidence to sustain the material facts charged in complainants' bill. *Wright v. Dudley,* 8 Mich. 75. And where the decree contains a finding of facts, as in this case, it will be presumed that the averments contained in the answer material to the issue were either unsupported by evidence, or disproved by complainants' proofs.

Before proceeding to the merits of the case as stated in complainants' bill, we will consider some preliminary questions made by counsel for defendant. This dam, under the complainants' bill, may be regarded as both a public and private nuisance. Wood, Nuis. § 16; *Barr v. Stevens,* 1 Bibb, 293; *Wesson v. Washburn Iron Co.,* 13 Allen, 95; *Bamford v. Turnley,* 3 Best & S. 66; Wood, Nuis. § 365; *Waffle v. N. Y. C. R. R. Co.,* 58 Barb. 413; *People v. Townsend,* 3 Hill, 479; *Stoughton v. State,* 5 Wis. 291; *Com. v. Webb,* 6 Rand. 726; *Douglass v. State,* 4 Wis. 387; *Treat v. Bates,* 27 Mich. 390.

It is claimed, if the dam is or causes a public nuisance, the proceeding against it should be by indictment or information in behalf of the people; that, if it is a private nuisance, the proceeding against it should be by action at law, under the statute, in behalf of the party or parties injured or especially aggrieved,—and in either proceeding the nuisance, if found, can only be abated in addition to punishment or damage imposed; and that the right to trial by jury should be preserved. See How. Stat. §§ 7961-7965.

Section 7965, How. Stat., reads as follows:

"The circuit court for any county shall have equity jurisdiction in all matters concerning nuisances, where there is not a plain, adequate, and complete remedy at law, and may grant injunctions to stay or prevent nuisances."

There is no question but that the remedy for a public nuisance at common law is by indictment. 3 Bl. Comm. *c.* 13; 1 Chit. Pr. 383; *Respublica v. Arnold,* 3 Yeates, 417.

Courts of equity have, also, always in this State, had jurisdiction in cases of nuisance, where the law failed to furnish the adequate remedy, and the statute above quoted has been held not to extend or enlarge the jurisdiction of these courts upon that subject. *Norris v. Hill,* 1 Mich. 202.[1]

Private persons may seek the aid of a court of equity to restrain or abate a public nuisance. They must, however, show some special or peculiar injury to themselves, distinct from what they suffer in common with the public, in order to succeed. *Bigelow v. Bridge Co.,* 14 Conn. 565; *Frink v. Lawrence,* 20 Id. 117; *O'Brien v. Norwich & W. R. R. Co.,* 17 Id. 372; *Corning v. Lowerre,* 6 Johns. Ch. 439; *Doolittle v. Supervisors of Broome Co.,* 18 N. Y. 155; *Barnes v. City of Racine,* 4 Wis. 454. Where, as in this case, it appears there are several separate owners of distinct property interests that are alike affected, they may join as complainants in a prosecution for public nuisance without the Attorney General's aid, where the grievance stated has one source, and operates in the same general manner against all; and it is not necessary that a trial at law should precede the filing of an injunction bill in cases where the remedy at law is not "plain, adequate, and complete." If a court of equity in such case deems a finding by a jury desirable, it may in its discretion direct one. *Robinson v. Baugh,* 31 Mich. 290; *White v. Forbes,* Walk. Ch. 112.

The bill in this case is not filed to punish the defendant, or to obtain a decree for that purpose, nor to recover damages or penalty, but to enjoin and abate the nuisance complained of; and it is entirely unnecessary that damages should be found, or fine imposed, or penalty or imprisonment decreed, before the order could be made to abate the dam

[1] See *Stone v. Roscommon Lumber Co.,* 59 Mich. 24.

causing the nuisance. This is a chancery proceeding, in which, if the court has jurisdiction at all, it may adopt, by its orders and decrees, just such measures as it may deem best to abate the nuisance, if one shall be found to exist; and it may omit all such means, in the exercise of its powers in the premises, as it shall deem proper.

Our attention upon this point has been called to the case of *Crippen v. People*, 8 Mich. 116. That was a proceeding by indictment, and not in equity; and, while the position of counsel may find some support in common-law proceedings to abate a nuisance, it was always technical, and never served any useful purpose, and the case referred to says no more than, when the power of abatement is exercised in common-law proceedings, "it must be at the time of imposing the fine or imprisonment, and form a part of the same judgment."

There can be no question now, under the decisions of this Court already cited, but that it is entirely competent for the court, if found necessary to afford the proper redress for the grievance complained of, to order the dam abated, and take all necessary measures to carry out the decree at the earliest possible moment. *Treat v. Bates*, 27 Mich. 390. The jurisdiction of courts of chancery in this class of cases is not only preventive, but in the highest degree remedial; and nice questions of practice, and scruples as to the correctness of the choice made of remedies, must give way to effective action, when the health and lives of a community are in danger.

In coming to the merits of this case, as presented by the bill of complaint, it very clearly appears that the nuisance created by raising the dam in question on Stoney creek, and for many years continued there by this defendant, is of a very dangerous kind to the health of a large community; that it is especially offensive, objectionable, and dangerous to the complainants, who have their homes there, and, in order to enjoy the use of them, are obliged to reside along the banks of his overflowing creek; that it has caused both

sickness and death among them, and that they are all affected in the same manner, and from the same cause, and to a much greater extent than the rest of the injured community; that the dam and business carried on by means thereof is of little or no value to the defendant; and that some of the complainants have yearly, for very many years past, asked defendant to remove his dam, because of the sickness and death caused by the same among the people affected thereby, and he refuses so to do.

That more than 30 years ago the defendant's grantor was convicted of nuisance for maintaining the dam by a competent court, and it is admitted by the defendant, and averred in his answer, that the "dam has been maintained in the same manner, and flooded lands to the same extent, as at present," ever since it was declared a nuisance; and, instead of regarding this as an additional reason why the nuisance should be abated, defendant avers that the continuance of the nuisance to the present time has given him a perfectly indefeasable right by prescription to maintain the dam, with all its terrible consequences.

It further appears that, notwithstanding by the decision of a competent court at law the overflow caused by the dam was declared a nuisance, yet that proceeding failed to remedy the nuisance, or cause the dam to be removed, and that after repeated applications to the legal authorities to abate the nuisance they had utterly failed to afford complainants any relief. I am not able to agree with the learned counsel for the defendant that the bill shows no equities entitling the complainants to the relief prayed, but, on the contrary, in my judgment, it would be difficult to reasonably imagine a case appealing stronger to the exercise of equity jurisdiction, and for the granting of equitable relief.

In *Carlisle v. Cooper*, 21 N. J. Eq. 576, it is stated that—

"Equity jurisdiction in cases of nuisance is not original,

but results from necessity, to protect property from an injury from which no adequate redress can be obtained by action at law;"—

And certainly the necessity which compels a resort to a court of equity to protect property cannot be greater than that for the preservation of the health and life of the citizen.

It is claimed by defendant's counsel that complainants' remedy at law is plain, adequate, and complete. This is not a case to obtain damages of the defendant for injury done to complainants' property and property rights, but to prevent the defendant from depriving complainants of their right to live and to breathe nature's pure air; from depriving them and their families of their ability to enjoy their homes, their property, their lives, and their health. For the loss of these things no adequate remedy can be had at law. They are not susceptible of pecuniary redress, and I fully agree with Mr. Justice COOLEY where he says, in *Edwards v. Allouez Mining Co.*, 38 Mich. 50, 51,—

"If one man creates intolerable smells near his neighbor's homestead,   *   *   *   or in any other way destroys the comfortable, peaceful, and quiet occupation of his homestead, he injures him irrevocably. No man holds the comfort of his home for sale, and no man is willing to accept in lieu of it an award of damages. If equity could not enjoin such a nuisance, the writ ought to be dispensed with altogether, and the doctrine of irreparable mischief might be dismissed as meaningless."

The injury in that case was by—

"A continuous series of invasions upon complainant's freehold by using a running stream as a means of transporting sand upon his bottom land in quantities sufficient to bury it."

Chief Justice CAMPBELL said in the same case:

"No remedy at law is adequate for such a grievance as is here complained of, because no legal remedy can secure complainant the use of his own property."

And again he says:

"The rights to equitable relief, where that is the only adequate remedy, are as absolute as to legal relief."

I think the case clearly shows that no adequate remedy at law can be found for the grievance complained of, and that complainants are not, by any action or want of action shown by this record, estopped from bringing this suit. Whether the maintenance of the defendant's dam is regarded as a public or private nuisance, equity has complete jurisdiction in the matter, upon the facts stated in complainants' bill. 2 Story, Eq. Jur. § 925. And in case of a private nuisance the abatement of the dam follows the conviction, and as matter of course, unless the judge certifies in his minutes at the trial that such abatement is not necessary. See How. Stat. § 7961; *Cleveland v. Gas Light Co.*, 20 N. J. Eq. 201; *Rochester v. Curtiss*, Clarke, Ch. 336; *Corning v. Troy I. & N. Factory*, 40 N. Y. 191.

These several complainants stand in like relation to defendant, and to the subject-matter of the complaint made by complainants, and the bill was properly brought by them. Their equitable rights all require the same protection, and the circuit judge did right in granting it to them. Neither singly nor collectively have they any adequate or complete remedy at law. That remedy was early tried, and found insufficient. The fact that the defendant was the owner of the privilege to raise the water upon the complainants' lands, or upon some of them, did not license him to create, perpetuate, and maintain a public nuisance, and that fact is of no importance in the case. The complainants, nor either of them, had any power to grant to the defendant any such license.

The defendant could acquire no right by prescription to maintain a public nuisance upon his own or his neighbor's lands. *Ogdensburg v. Lovejoy*, 2 Thomp. & C. 83; S. C. 58 N. Y. 662; *Mills v. Hall*, 9 Wend. 315; 4 Wait, Act. & Def. 782; *Queen v. Brewster*, 8 U. C. C. P. 208; *Com. v. Upton*, 6 Gray, 473; *Howell v. M'Coy*, 3 Rawle, 256; *Weld v. Hornby*, 7 East, 199.

Laches in not prosecuting earlier, and presumptions there-from, whatever may be their effect in cases where pecuniary compensation is alone the object sought, cannot be considered when the injury to life and health is the sole subject of complaint. The bill of complaint clearly shows that the maintenance of the dam is the cause of the nuisance complained of; that were it abated the mischief would be avoided; that the grantor of defendant admitted the agency of the dam in the premises; and it clearly appears that the pernicious consequences of maintaining the dam have never been less since the defendant has owned the property, and that its removal is the only adequate remedy for the grievance complained of. The necessity for such removal is found by the circuit judge, after hearing all the testimony in the case, and after having viewed the premises himself in company with parties and their counsel, and I think the decree entered by him in the case is fully warranted, and should be affirmed.