Com. of Pennsylvania v. Freed, Appellant.

Argued April 18, 1932.

530

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*Edw. J. Thompson,* for appellant.

*F. Cortez Bell,* district attorney, for appellee.

Opinion by Stadtfeld, J., October 10, 1932:

These were three indictments against Harry M. Freed for alleged violations of the Securities Act of 1927. The first indictment alleges that the defendant on March 3, 1931, being a salesman of securities, did unlawfully sell and offer for sale, contrary to said act of assembly, to one Matilda Kemp certain convertible debenture gold bonds of the Roxian Amusement Company, he, the said defendant, and it, the said Roxian Amusement Company, not being at the time registered with the Securities Commission of the Commonwealth as an agent, salesman and dealer authorized to sell securities of said company. The second count in the indictment alleges the unlawful solicitation of subscriptions to, and orders for said securities from the said Matilda Kemp. The second indictment alleges the violation by said defendant of the Securities Act, in that on March 3, 1931, he did solicit subscrip-

tions to and orders from one Victor Johnson for similar securities under similar circumstances. The third indictment alleges that the said defendant violated the Securities Act in having on April 1, 1931, as salesman of securities, sold and offered to sell similar securities to one Henrietta Kephart. The second count in the indictment alleges that on that date, the defendant, as salesman of securities, solicited subscriptions to and orders for these securities from the said Henrietta Kephart.

The three indictments came to trial on September 14, 1931 before CHASE, J., and resulted in a verdict of guilty. From the judgment entered and the sentence pronounced thereon against defendant, he has appealed to this court, alleging that the trial judge erred in overruling his motion to direct an acquittal, in refusing to withdraw a juror, in his charge to the jury, in refusing motion for new trial, in the admission of certain evidence and the answers to certain points.

At the same time as were tried the indictments against Freed, the defendant, there were also tried with them, three indictments against Charles Foltz, charging similar offenses arising out of, and in connection with the transactions charged against Freed.

The Securities Act is entitled, "An act for the registration and regulation of certain individuals and entities, selling, offering for sale or delivery, soliciting subscriptions to, or orders for, or undertaking to dispose of, inviting offers for, or inquiries about, or dealing in any manner in securities defined herein, including securities issued by them;" etc., etc.

By clause (c) of section 2 of the act it is provided that "The term, 'dealer' shall include every person or entity, other than a salesman who engages in this state, either for all or for part of his or its time, directly or through an agent, in selling, offering for sale or delivery, or soliciting subscriptions to, or orders for, or undertaking to dispose of, or to invite offers for, or

inquiries about, or dealing in, any manner in any security or securities within this state, including securities issued by such entity.''

It excepts, inter alia, from this definition, companies disposing of their own securities for their sole accounts in the following language, (8): ''Wherein the issuer, a company organized under the laws of this state, or a company organized under other laws which has at least one-half of its paid in capital invested, employed or used in this state, disposes of its own securities, in good faith and not for the purpose of avoiding the provisions of this act, for the sole account of the issuer, without any commission or fee, and at a total expense of not more than three per centum of the proceeds realized thereon, and where no part of the issue is used directly or indirectly in payment for patents, services, good-will, or for property located outside of this state.'' By clause (d) it defines ''salesman'' as follows: ''The term, 'salesman' shall except as provided in section four, (which section has no application to the facts in this case) include every person or company employed or appointed or authorized by a dealer to sell, offer for sale or delivery, or solicit subscriptions to or orders for, or dispose of inquiries about, or deal in any manner in, securities within this state, whether by direct act or through subagents.''

By clause (f) of section 2, it defines ''fraud;'' ''fraudulent;'' ''fraudulent practice''—''The terms 'fraud,' 'fraudulent,' 'fraudulent practice,' shall include any misrepresentation, in any manner, of a relevant fact not made honestly and in good faith; any promise or representation or predication as to the future not made honestly and in good faith, or an intentional failure to disclose a material fact, the gaining, directly or indirectly through the sale of any security, of an underwriting or promotion fee or profit, selling or managing commission or profit so gross and exorbitant as to be unconscionable and fraudulent; and

any scheme, device or other artifice to obtain such a profit, fee, or commission: Provided, however, That nothing herein shall limit or diminish the full meaning of the terms 'fraud' and 'fraudulent' as applied or accepted in courts of law or equity.''

By section 3 of the act, under which the indictments were drawn, it is provided, inter alia, that ''no salesman or agent shall, in behalf of any dealer, sell, offer for sale, tender for sale or delivery, or solicit subscriptions to or orders for, or dispose or undertake to dispose of, or invite offers for or inquiries about, any securities within this state, unless registered as a salesman or agent of a dealer under the provisions of this act,'' and by section 22, a violation of these provisions is made a misdemeanor. In section 10, provision is made for the registration of agents or salesmen upon the written application of a registered dealer, and for the issuing to them of registration certificates, and upon the application by the dealer the registration of an agent or salesman may be cancelled.

Under section 12, any registered dealer, and any person or company named in the registration certificate as an agent or salesman, may, in behalf of any dealer sell, offer for sale or solicit subscriptions to or orders for securities in this state.

Section 15 provides that the commission may require dealers to file lists, and prohibit sale of securities.

According to the testimony, it appears that the defendant had been employed as a salesman of D. Gleich and Company, dealers in securities, until the 16th day of March, 1931, when he turned in his registration card. His registration as such was cancelled on the 21st day of March, 1931. Daniel Gleich, who did business under the name of D. Gleich and Company, was called as a witness on behalf of the Commonwealth, and testified that his company never sold any of the securities of the Roxian Amusement Company, and that none of his salesmen, as salesmen of his company,

were ever authorized to sell any securities of the Roxian Amusement Company.

The following excerpt from the charge of the trial judge correctly summarizes the testimony in relation to some of the transactions embodied in the indictments: ......"the Commonwealth produces several witnesses, some who testify that they bought bonds of the Roxian Amusement Company from the defendants, while others testified that they were solicited to buy these bonds by the defendants, this testimony of these witnesses is corroborated by the defendant Foltz, who took the stand and testified that on March the third or April the first, he having been a former employee of the Associated Gas and Electric Company in this district, but at that time working for the Roxian Amusement Company, as what he said was assistant manager to the manager of the theatre; that he had been sick, or had a hernia and was advised to go into the office, and while in the office, the other defendant, Mr. Freed, who, he said, was field surveyor (or one who goes to a place to determine the sites, whether it would be the proper place to locate a theatre) was coming up through this section. He made the offer to come up here, that he knew this company had some stock or bonds which they desired to sell; that they came up here, and he, as a result of his employment with the Associated Gas and Electric Company knew that certain people held certain stock of the Associated Gas and Electric Company in this section; that he and Mr. Freed went into the Philipsburg section and the Moshannon section, and went to Mrs. Kemp, one of the women here who alleges she transferred or sold some of her stock for gold debenture bonds of the Roxian Amusement Company. He, (Foltz), introduced Mr. Freed who did the talking, and as a result of that talk with Mrs. Kemp, a widow lady seventy years of age, agreed to purchase $1,000 worth of these convertible, debenture gold bonds of the Roxian Amusement

Company. Exhibit 'A' of the Commonwealth will show the terms agreed upon. She was to receive six per cent on these gold debenture bonds plus a bonus of one per cent until retired, or in 1940 sometime; that in addition to this there was an agreement whereby she was to pay for these bonds by turning over to them her Associated Gas and Electric stock Class "A" stock, 50 shares. There was also some arrangement between these two men, however, it doesn't appear in the contract, as shown by exhibit 'A,' that they were not to sell her Associated Gas and Electric stock without her consent, and she was to receive the dividends in addition to the dividends of the gold debenture stock.''

There was also the testimony of Henrietta Kephart that on April 1, 1931, Freed and Foltz called on her and wanted her to trade her Associated Gas and Electric stock for bonds of the Roxian Amusement Company. She had known Foltz before as a meter reader. He introduced Freed to her. She purchased $700 of these bonds, and gave her Associated Gas and Electric stock in payment.

Victor Johnson testified to having been called on, on March 3, 1931 by Freed and Foltz. He had known Foltz before as a meter reader. He introduced Freed as representing the Roxian Amusement Company. They wanted him to trade his Associated Gas and Electric stock for gold bonds of the Roxian Amusement Company. They represented he would get in earnings six per cent every six months, and in 1942, when the bonds were due, it would be seven per cent. That they would use his gas and electric stock as collateral. That his dividends on this stock would be the same, and the bonds would be six or seven per cent in addition.

The evidence disclosed additional sales and solicitations of sales.

The first assignment of error covers the pronounce-

ment of sentence upon the defendant, and need not be separately discussed.

The second assignment relates to the refusal to grant a new trial and arrest of judgment, and in support thereof, refers to thirty-six reasons appearing in the record in support of the motion for a new trial. If appellant intended to rely upon each and every one of the reasons alleged, the assignment of error is in violation of Rule 22 of this court, requiring each error relied on to be specified particularly and by itself. We will not therefore discuss separately the reasons in support of said motion. To the extent that the same are separately covered by other assignments, we will pass on them infra.

The third assignment relates to the refusal of the court to sustain the motion of counsel for defendant to withdraw a juror because of certain questions by the district attorney in relation to certain exhibits offered on behalf of the Commonwealth covering the registration of defendant as a salesman of securities, and the rights of defendant thereunder to sell securities of the Roxian Amusement Company, or to sell securities of any dealer other than D. Gleich and Company. In view of the fact that the court sustained the objections to said questions, and directed the striking out of any answers given, we do not think that there is any merit in the assignment. The withdrawal of a juror, because of anything occurring during the progress of a trial, is so largely within the discretion of the trial judge that we would not reverse because of a refusal of such request, unless there was a gross abuse of discretion to the prejudice of the defendant. Our views in relation to the rights of a registered salesman under this act of assembly as discussed infra, make this assignment of error of no importance.

The fourth assignment of error relates to the admission in rebuttal of certain testimony given by Ira G. Myers, prosecutor, in regard to a conversation he had

with Mr. Harrison, treasurer of the Roxian Amusement Company, the preceding evening, in which Harrison is said to have stated that the controlling interest of the Roxian Amusement Company had passed to the holding company, the Imperial Chain Theatre Company, without consideration. An examination of the record shows the following offer by the district attorney in connection with this testimony: "We now offer to prove by the witness on the stand that the Roxian Amusement Company, by whom the defendant, C. E. Foltz, avers to have been employed, gave or delivered to the Imperial Chain Theatres the controlling interest of the capital stock of the Roxian Amusement Company, without any consideration, for the purpose of showing the said defendant, C. E. Foltz, does come within the provision of paragraph eight, clause 'c,' of the Act of 1927 as amended."

As the offer limited the effect of the testimony to C. E. Foltz, we do not see how it in any manner prejudiced the defendant, Freed. Furthermore, the court, in its charge to the jury was particular in instructing them in stating, "These defendants are being tried together, but the evidence is to be weighed as to each of them as though they were being tried separately." In addition, the order in which testimony may be presented, and what may be presented in rebuttal, are so largely in the discretion of the trial judge, that we can see no abuse of discretion in the ruling of the court on that offer.

The fifth assignment of error alleges error in the charge of the court concerning the purpose of the securities act, in stating the act was passed for the purpose of protecting the public from purchasing worthless stocks, bonds, etc., by requiring those who desired to solicit, sell or offer to sell the same to the public to secure a license before so doing, and that the act strikes at fraud and because of that, the bars are let down on behalf of the Commonwealth on evi-

dence which directly or indirectly bears on such a proposition.

The defendant was indicted for an alleged violation of the securities act in acting as a salesman of certain securities of the Roxian Amusement Company, without it, the said company, or the said defendant being registered as an agent, dealer or salesman under said act of assembly. The defendant, himself, necessarily had to be registered if engaged in the sale of securities, or was compelled to justify his acts as selling for the Roxian Amusement Company pursuant to one of the exceptions contained in said act. If he depended upon the latter, the question of good faith, and whether he was guilty of any fraud or fraudulent practice in connection with such sales was necessarily involved under section 22 of the act under which the indictment was drawn. The act expressly defines "fraud," "fraudulent" and "fraudulent practice" under clause (f) of subsection 14 of paragraph 2. Under section 17, it provides for the revocation or suspension of any registration if any agent has been guilty of any fraud or fraudulent practice. Under section 15, the commission may require a dealer to file with it a list of securities offered for sale, for the purpose of determining if the said offerings are made honestly and in good faith, and if not so made, but made with intent to deceive or defraud, it may prohibit the dealer from selling or offering the same, etc. Under section 16, if the commission has reason to believe at any time that any dealer has been guilty of any fraud or fraudulent practice, it may after hearing, revoke said dealer's registration. Under section 17, an agent's or salesman's registration may be revoked under like circumstances.

As was said by the former Chief Justice Moschzisker in the leading case of Bagley Co., Inc. v. Cameron, 282 Pa. 84, 90, 92, in construing the Act of 1923, which is substantially the same as the Act of 1927, "Many states in the Union have passed similar stat-

utes, popularly known as 'Blue Sky Laws,' and, while the provisions of the various acts differ in certain respects from each other, the underlying purposes present in all of them is, in one way or another, *to protect the investing public.* ... ... . what it (the act) contemplates is precisely that which is set forth above,—an investigation to determine *whether the securities are being offered to the public 'honestly and in good faith' without 'an intent to deceive or defraud.'* " To the same effect is Insuranshares Corporation v. Pa. Sec. Com., 298 Pa. 263. (Italics ours.)

In the instant case, the sale to Matilda Kemp on March 3, 1931, and the solicitation of Victor Johnson, were made while the defendant was registered as a salesman under D. Gleich and Company, dealers in securities. The other sale made to Henrietta Kephart on April 1, 1931, was made after the cancellation of the registration certificate theretofore held by the defendant. As to none of the acts charged in connection with the sale or solicitation of sales of the Roxian Amusement Company securities, is it contended that the defendant was acting on behalf of D. Gleich and Company under whom he had been registered. The sales and solicitation of sales were on behalf of the Roxian Amusement Company and of its securities. The court instructed the jury, "these gentlemen are charged in the indictments with the unlawful selling of stock, or bonds, as salesmen, and also soliciting the sale of bonds or stock, without first complying with the law as to license as 'salesmen.' ... ... The second count in these indictments, as I have said to you, are those which are directed against solicitation of sales, or subscription to, or orders for, or dispose or undertake to dispose of securities as 'salesmen' without having complied with the law as to registration, or license to act as salesmen, and if you find under the evidence, beyond a reasonable doubt that the defendants as salesmen, as the act defines the term, as I read it to you,

did sell and solicit sales of securities not registered, and without the proper authority under the act, to act as salesmen, the defendants would be guilty. ......
If you find in this case that these defendants, or either, were salesmen in the sense the act of assembly has defined that word; if you find from the evidence in this case, even though they were working for the Roxian Amusement Company, as salesmen, then you have a right to determine under the evidence, although they were selling theater company stock, to determine whether this stock was being sold in good faith, in compliance with the law."

We do not think that there is any just cause for complaint in regard to the expression of the court in relation to the intent of the act of assembly, nor in the manner in which the issue was presented to the jury.

The sixth assignment of error relates to the following instruction of the jury: "You recall Mr. Gleich's testimony, a member of the firm of which this defendant was a salesman, that this stock of the theatre company was not listed by his company and never had been authorized to be sold by them, so if Mr. Freed was found to be selling securities as a salesman of Roxian Amusement Company bonds in this case, and there being no evidence in this case whatever that Freed, insofar as the Roxian Amusement Company stock was concerned, that he was an agent of Gleich and Company, or a salesman of theirs, or that he had authority to sell this company's stock, the evidence being to the contrary." Appellant claims that the same is not in conformity with law, and was prejudicial to defendant's cause, there being no necessity for registration for sale of any particular securities or of any particular company.

A reading of the securities act shows that the definition of salesman, "is one employed or appointed or authorized by a *dealer.*" Again in section 3 of the act, "No salesman or agent shall *in behalf of any dealer*

*sell,* offer for sale, etc.'' Section 10 provides for the registration of agents and salesmen beginning, ''Upon written application by a registered *dealer* . ... ... shall register, as agents or salesmen *of such dealers,* such persons as the *dealer may request.''* And further provides, ''for cancellation of a salesman's or agent's registration upon application by the *dealer.''* Section 12 defining rights of registered salesmen, defines ''any person or company named in the registration certificate, as above provided, as an agent or salesman, may, *in behalf of any dealer,* sell, offer for sale or delivery.'' Section 14 prohibits ''any *dealer* or *salesman* from sending out any circulars or advertisements unless the *name of the dealer shall be subscribed thereto.''* Section 17, dealing with revocation of agents' or salesmen's registration, refers to them as *''agent or sales-man of any dealer.''*

The registration of a salesman by any particular dealer makes him a salesman for such dealer, and necessarily only for such securities as such dealer may deal in. If not dealt in by such dealer, he is not acting for or on behalf of such dealer. He must, therefore, under such circumstances bring himself within the protection of some other section of said act. If by registration with any particular dealer, the salesman could sell securities of any corporation, the latter not being a dealer, and not able to qualify as such, and not within the exceptions contained in the act relieving it from the necessity of registration, the purpose of the act would be defeated.

We find no error in the instruction referred to.

The seventh and eighth assignments of error may be considered together. The seventh assignment is as follows: ''The court below erred in instructing the jury as follows: 'You will recall there was no evidence in this case whether the Roxian Amusement Company was or was not a Pennsylvania corporation. The ex-

ceptions in the act just read are for the protection of Pennsylvania corporations.' "

The eighth assignment is as follows: "The court below erred in instructing the jury as follows: 'We have stated to you, that there is no burden on the Commonwealth to show in this case that the securities sold by the defendants or solicited to sell, if you find sales were made or solicited, and find the defendants were salesmen, as defined by the act, were securities of a Pennsylvania corporation sold under the exceptions and terms provided by the act that is a matter of defense.' "

Appellant claims that the instruction under the eighth assignment changes the burden of proof which at all times remains upon the Commonwealth, and does not correctly state the application of the act, and to so interpret the act would render it unconstitutional. This question was passed on in relation to a prosecution under this act in Com. v. Johnson, 89 Pa. Superior Ct. 439, wherein our Brother CUNNINGHAM says, p. 445: "The court further held that if the defendant claimed exemption from prosecution under any other exception in the act the responsibility was upon him to bring himself within such exception."

Analogous cases are found in relation to indictments for selling liquor without license. In Com. v. Wenzel, 24 Pa. Superior Ct. 467, it was held that a conviction for selling liquor without license will be sustained, although there was no proof that the defendant did not have a license. The burden of proof is on the defendant to show that he is within the privileged classes mentioned in the Act of May 13, 1887, P. L. 108.

Likewise in the trial of an indictment for practicing medicine without a license, the evidence is sufficient to warrant a conviction if the Commonwealth proves on the trial that the defendant did the prohibited act. It need go no further and prove a negative by showing that the defendant had no license authorizing him

to do it. The burden is on the defendant to produce a duly issued license authorizing him to practice: Commonwealth v. Jobe, 91 Pa. Superior Ct. 110. In that case the question was fully considered by our Brother GAWTHROP, from whose opinion we quote as follows, p. 116: "Lastly, it is urged that the learned court below erred in admitting the testimony of one Frye, a witness for the Commonwealth, to prove that appellant had no license to practice medicine. This testimony was objected to on the ground that the record in the office of the superintendent of Public Instruction in Harrisburg (being the office in which certificates of licensure must be recorded) was the best evidence. It would not help appellant if we were to hold that the evidence was incompetent and that its admission was error because it is undoubtedly the law in Pennsylvania that when a defendant is indicted under a statute which makes it unlawful for any person to do a certain thing unless he has first obtained a license in the manner provided by the statute, and imposes a penalty for doing it without such license, it is sufficient to warrant a conviction if the Commonwealth prove on the trial that he did the prohibited act; it need go no further and prove a negative by showing that he had no license to do it. The burden is on the defendant to produce a duly issued license authorizing him to do it: Com. v. Wenzel, 24 Pa. Superior Ct. 467; Com. v. Clymer, 217 Pa. 302; and Com. v. Holstine, 132 Pa. 357, 361. The same principle has been recognized in other states where it is held that if the defendant relies on a license as a defense the burden is on him to produce a license which authorizes him to do the thing which he is indicted for doing: State v. Foster, 23 N. H. 348, 55 Am. Dec. 191; Jefferson v. People, 101 N. Y. 19; Taylor v. State, 49 Ind. 555; State v. Ahern, 54 Minn. 195; Plainfield's Treasurer v. Watson, 57 N. J. L. 525; Com. v. Curran, 119 Mass. 206; Lambie v. State, 151 Ala. 86; Josey v.

State, 88 Ark. 269. This rule is in harmony with the weight of authority in other jurisdictions. (See Jones on Evidence Ed. 1908, Par. 181)."

There is therefore no merit in the eighth assignment.

The burden being upon defendant to bring himself within the exception under the act, it was incumbent on him to show that the Roxian Amusement Company was a Pennsylvania corporation, if that were deemed necessary. This disposes of the seventh assignment.

The discussion supra disposes of the ninth, tenth, eleventh and twelfth assignments of error. We think that the court below did not abuse its discretion in refusing a new trial.

It may be that the court below erred in some of its rulings on evidence, but these mistakes were not such as to affect the final determination of the case, and, therefore, we shall not discuss them.

It would have been error to have withdrawn the case from the consideration of the jury. The verdict was amply justified under the evidence. The assignments of error are overruled, and the judgment is affirmed, and it is ordered that the defendant appear in the court below at such time as he may be there called, and that he by that court be committed until he has complied with the sentence, or any part of it, which had not been performed at the time the appeal in this case was made a supersedeas.