## Respublica *against* Peter Arnold.

Indictment for a nuisance in obstructing an ancient water course, whereby a public highway was overflowed and spoiled, need not state, how far in length or breadth the water stood on the road.

Such indictment laying the nuisance to be in the commonwealth's highway, or road leading from, &c. is good.

An indictment was found against the defendant, for a nuisance, in May sessions 1801, as follows :

Bedford county, ss.

The grand inquest for the county of Bedford, upon their oaths and affirmations respectively, do present, that Peter Arnold, late of the county aforesaid, yeoman, the 22d day of April in the year of our Lord 1801, with force and arms, &c. at the townships of Coleraine and Providence, in the county aforesaid, and within the jurisdiction of this court, a certain ancient water-course, called the Raystown branch of Juniata, and a certain other ancient water-course called Dunning's creek, which said ancient water-course called the Raystown branch of Juniata, running from Londonderry township in the county aforesaid, and which said ancient water-course called Dunning's creek, running from St. Clair township in the county aforesaid, and uniting in and running through Bedford township, in the county aforesaid, and running between the said townships of Londonderry and St. *Clair, and the township of Hopewell, in the said *418] county, across and through which the commonwealth's highway, or a road leading from the town of Bedford, in the county aforesaid, towards and unto the crossings of Juniata, in the county aforesaid, was laid out in due form of law, did obstruct and stop up, and the said water-courses so as aforesaid obstructed and stopped up, from the said 22d day of April in the year aforesaid, until the day of the taking of this inquisition, at the township of Bedford, in the county aforesaid, unlawfully and injuriously hath continued and still doth continue, by reason whereof the rain and waters that were wont and ought to flow and pass through the said water-courses on the same day and year, and divers other days and times afterwards, between that day and the day of the taking of this inquisition, did overflow and remain in the commonwealth's highway or road aforesaid, in the township of Bedford aforesaid, and thereby the same high-

way or road was and yet is greatly hurt and spoiled, so that the liege subjects of the commonwealth, through the same highway or road, with their horses, coaches, carts and carriages, then and at other days and times, could not nor yet can go, return, pass, ride and labour, as they ought and were wont to do, to the great damage and common nuisance of all the liege subjects of the commonwealth, through the same highway or road, going, returning, passing, riding and labouring, and against the peace and dignity of the commonwealth of Pennsylvania.

Another indictment was found against the defendant in August sessions 1801, for a nuisance, in obstructing the waters of the Raystown branch of Juniata, and thereby overflowing the highway, which pursued the preceding form, *mutatis mutandis*. Both indictments were removed into the Circuit Court, and came on to trial at the last Circuit Court for Bedford county on the 24th November 1801, before YEATES and SMITH, Justices, when the defendant was convicted on both indictments.

The following reasons were then filed in arrest of judgment.

1. For that the indictment does not state with certainty where the nuisance was, nor how far in length or breadth it did stand on the road.

2. For that the place in which the nuisance was stated to be committed, is in one of the commonwealth's highways or a road leading from the town of Bedford towards and unto the crossings of Juniata ; and being in the disjunctive, cannot be supported ; more especially, as it is uncertain, whether the said road is a public highway, or a private road.

Messrs. Duncan and Clark argued for the defendant. Negligence in drawing indictments ought not to be countenanced. 3 Term Rep. 473–4. Every person accused [*419 should know the specific crime with which he is charged, in order to prepare for his defence. The offence must be laid with accuracy and precision, and certainty at least to a common intent is indispensably requisite. But here the charge is indefinite.

It is necessary to shew how far a nuisance extends in length and breadth. 1 Hawk. c. 76, § 88. Indictment for stopping a certain part of a road at K. is bad, nor is it good to shew that the nuisance was so long or so broad by estimation. Cro. Jac. 324. It must appear to be a nuisance and in the highway. 1 Hawk. c. 76, § 89, 91.

The essence of the crime here charged, is the spoiling of a public road, by obstructing the waters of ancient water courses. But it is laid, that the injury was thereby done to a highway or road leading from, &c. Our laws recognize private roads as well as public highways, and the word *road* does not necessarily convey the idea of a public highway. If a supervisor had been indicted for a breach of duty in such a road as is described in both indictments, it could not be supported. The law is generally laid down, that an indictment in the disjunctive is bad ;

as, murdered, or caused to be murdered ; forged, or caused to be forged, &c. 2 Haw. c. 25, § 58.    The instances put are mere illustrations of the rule.    It will not be pretended, that an indictment charging A, that he had murdered B or C ; or, that he had forged a bond or note, could be maintained, though the disjunctive does not relate to the act itself, but to the description of the person or thing concerning which the crime was committed.    If a law should prohibit certain acts under a penalty, stating in an indictment, that the party did this thing or that thing so prohibited, would be bad.    Thus, where under the intrusion act of 11th April 1795, (3 St. Laws 703) certain persons were indicted for taking possession of, entering, intruding or settling on lands within the limits of Luzerne county, such indictments have generally been considered by counsel as defective.    Here the road said to be spoiled, not being laid as a common highway and public road, both indictments must be deemed substantially defective.

Messrs. Hamilton, Riddle and Dunlap, insisted for the commonwealth, that the first exception was extremely futile ; it is impossible to describe with certainty the length or breadth of a nuisance in a road overflowed with water, from its constant changes either by the increase or decrease of the stream obstructed.    The present indictments are fully warranted by the precedent in Stubb's Cro. Circ. Comp. 495.

*420]

Nor will the second exception serve the defendant.    The rule that an indictment shall not be laid in the disjunctive is inapplicable to the present case.    The objection has only prevailed where it went to the act itself, and which was uncertainly laid ; such are the instances collected by Serjeant Hawkins, and the cases under the intrusion act cited by the defendant's counsel. Every fact must be charged directly and with precision against a defendant, that he may prepare his defence accordingly.    If several independent acts are charged against him, they must be laid in the conjunctive, and he must then come prepared against all the charges.    Here the words *commonwealth's highway* controul the whole sentence, and will equally refer to the word *road.*    On a minute examination of all the laws respecting the highways in this state, it will be found that the legislature use the terms *highways and roads* in one common sense ; and that unless the word *private*, or a similar adjective, precedes the expression *road*, it is uniformly used as a public highway.

*Curia advisare vult.*

And now, November 18th, 1802, YEATES, J. delivered the opinion of the court as follows :

The first reason in arrest of judgment is, that the indictments do not state with certainty where the nuisance was, nor how far in length or breadth the water stood in the road.

On this head it was urged, that every indictment ought cer-

tainly to shew to what part of the highway the nuisance extended, as by shewing how many feet in length, and how many feet in breadth it contained. 1 Hawk. c. 76, § 88. Cites 2 Rol. Abr. 181. Cro. Jac. 324. Latch 183. But in Rex v. Smith, Trin. 27 Geo. 2. Sayer 98, it was determined, that it is not necessary to set out the length and breadth of a nuisance in an indictment. The ground of the objection rested on this, that though neither the length nor breadth of the nuisance is traversable, both ought to be set out in an indictment for a nuisance, in order to guide the discretion of the court in setting a fine; but, the court said, it is not necessary on that account, regard being had by the court in setting a fine to the length and breadth of the nuisance proved, and not to that set out. The same point was determined in Rex v. Brookes, Ib. 168, and again in Rex v. the inhabitants of East Lidford. Besides, I cannot see how this precision can be expected, as to the description of water overflowing a road. It is not analogous to the case of a fence thrown across a road, *whose height and length, while it continues, are uniformly the same. Here the water is evanes-  [*421 cent, after having reached its height, decreasing by the falling of the stream, evaporation, &c. And it is sufficient for us, that the indictment pursues precedents in cases of the like nature, as may be seen in Stubb's Cro. Circ. Compa. 495, 4th ed. 296.

The second reason is, that the place in which the nuisance was stated to be committed, is in the commonwealth's high-way, or a road leading from the town of Bedford, in the county aforesaid, towards and unto the crossings of Juniata, in the same county; and the same being thus described in the disjunctive cannot be supported, more especially as it is uncertain whether the said road is a public highway or private road.

It was objected, that an indictment in the disjunctive, as that the defendant forged or caused to be forged, &c. is bad, though if laid in the conjunctive, the party must come prepared against both charges. 1 Salk. 342, 371. 2 Stra. 900. 1 Burr. 400. 5 Mod. 137. Annal. 370. 1 Barnard. B. R. 347. 2 Sess. Cas. 25. 2 Haw. c. 25, § 58. The laws of this state recognize private as well as public roads; and as it cannot be denied, that an indictment must be precise and certain as to all points, the defendant could not be prepared here in his defence as to a nuisance, which might as laid, be either in a public or private road.

To this it is answered, that this indictment cannot be said to be laid in the alternative. Indeed, Lord Mansfield thought there was no reason for this nicety in indictments. It makes no difference to the defendant, whether the charge is in the disjunctive or conjunctive. The substance is exactly the same. 1 Burr. 400.

But in all the cases, wherein this objection has been taken, it has gone to the act itself, where the very offence was described in the disjunctive, as forged or caused to be forged, murdered or caused to be murdered, beat or caused to be beaten, convey-

ed or caused to be conveyed, &c. ; and the ground is, that the offences being distinct, and it not appearing of which specific offence the indictors had accused the defendants, such indictments were held vicious. Here the defendant is charged positively with obstructing and stopping up ancient water courses, by reason whereof the commonwealth's highway or road leading from Bedford to the crossings became impassable, &c.

The word *road,* used generally in our laws, is uniformly applied to public roads, unless where the diminutive private is added thereto. It is synonymous with the term highway. By the act of assembly of 1700, 1 St. Laws 16, § 1, the governor and council for the time being, shall lay out all the king's ways *or public roads, which roads shall be recorded in the council books. The 2d section gives jurisdiction to the justices of each county court to lay out a road or cartway into the public road, but which in practice has been extended to all public roads whatever. The 4th section provides, that if any person shall presume to stop or hinder any of the said highways, or other roads, he shall be fined 5l., part thereof shall be employed in repairing and clearing other roads, &c.

*422]

The preamble to the act of 20th February 1735–6, recites that it was provided, that all roads laid out by the directions of the act of 1700, should be public highways, and the 1st section gives jurisdiction to the Courts of Quarter Sessions, to lay out private roads. 1 St. Laws 289.

The act of 21st March 1772, (1 St. Laws 623) made perpetual by the law of 1st March 1800, (4 St. Laws 563) recites in the first section, that whereas the laws for keeping in repairs the roads and highways have been found burdensome, &c., and insufficient for making effectual repairs in the said roads, it directs that supervisors refusing or neglecting to take upon them the office when elected, shall forfeit 10l. to be applied towards repairing the said roads. In other parts of the act, highways and roads convey the same precise idea.

So in the law of 8th February 1785, (2 St. Laws 237) entitled "an act to enable the courts of Quarter Sessions of the "several counties in this commonwealth to vacate roads and "highways in proper cases." In the 1st section, the general words, roads and highways, occur no less than four times ; and in the last, the public nature of them is clearly expressed. In § 2 and 4, the terms, highways, and roads, are used as descriptive of the same way. So also in § 1, of the act of 21st September 1715, (2 St. Laws 388.)

The law of 29th March 1787, (2 St. Laws 515) impowering the appointment of commissioners to lay out a state highway between the Frankstown branch of Juniata and Conemaugh, is entitled "an act for opening and establishing a road between those waters ; and it is so styled in the preamble, and likewise in § 3.

It would be a waste of time to recapitulate various other laws, wherein it appears, that where no epithet is applied to the word

*road,* it is uniformly taken as a public highway.    And such is the common as well as legal acceptation of the word *road.*

Again.   In Rex *v.* Brookes, (Sayer 167) the indictment charges the defendant, that "he dug two gripps or ditches in a certain "passage or footway, one of which was in depth 6 feet and in "width 12 feet, the other in depth 6 feet and in width 13 feet, "to the nuisance of all the king's subjects."   It was *there said that the passage or footway was not alledged to be a common way for all the king's subjects ; and that an indictment will not lie for a nuisance in a way, unless the way be common for all the king's subjects.    But the gripps or ditches in the passage or footway are alleged to be to the nuisance of all the king's subjects, which in Thrower's case, (1 Vent. 208.   3 Kib. 28) was holden to be a sufficient allegation, that the way wherein the nuisance was alledged to be, was a common way for all the king's subjects. [*423

Thrower was indicted at the sessions of the peace for Ipswich, for stopping *communem viam pedestrem ad ecclesiam de Witby.*   On a motion to quash the indictment, Lord Chief Justice HALE said : "If there were alledged to be *communis via "pedestris ad ecclesiam pro parochianis,* the indictment would "not be good ; for then the nuisance would extend no further "than the parishioners, for which they have their particular "suits ; but for aught appears, this is a common footway, and "the church is only the *terminus ad quem,* and it may lead fur- "ther, the church being expressed only to ascertain it ; and it is "laid *ad commune nocumentum.*   Wherefore," &c.

The whole texture of these indictments plainly evinces, that the word *road* used therein, means *ex necessitate rei* a road and common highway.   Besides, the expressions, commonwealth's highway, give a clear appropriate idea, and the first word must be carried through the whole sentence.   It is laid, that "by rea- "son of the obstruction and stopping up of the water course, "the rain and waters overflowed and remained in the common- "wealth's highway or road, and thereby the same was and yet "is greatly hurt and spoiled, so that the liege subjects of the "commonwealth through the same highway or road, with their "horses, coaches, carts and carriages could not, nor yet can go, "return, pass, ride and labour, as they ought, and were wont to "do."   And it concludes : "To the great damage and common "nuisance of all the liege subjects of the commonwealth, through "the same highway or road going," &c.

Upon the whole, I am of opinion that the reasons offered on the part of the defendant, are not sufficient to arrest the judgment for the commonwealth, on both convictions.

Judgment, that the defendant on each conviction, pay a fine of 5l. to the supervisors of the highways of Colraine township, to be employed for the clearing and removing the nuisance, and for the use of the roads within the same township, and pay the

[M'Intire's Lessee *v.* Ward.]

costs of prosecution; and that the sheriff do forthwith abate and *alter the dam so as to bring the same within the limitations of the act of assembly of 29th March 1802. 5 St. Laws 122.

*424]

Distinguished in 21 Pa. 530.