Commonwealth ex rel., Appellant, *v.* Faux.

Argued October 25, 1928.

Before Trexler, Keller, Linn, Gawthrop and Cunningham, JJ.

*Thomas Raeburn White,* and with him *Albert B. Maris,* of *White, Parry, Schnader & Maris,* for appellant.—References in deeds to the lane as a road or street were evidence that it was a public highway

which in the absence of countervailing proof must be accepted as conclusive: Respublica v. Arnold, 3 Yeates 417; Sewer Street, 8 Pa. County Ct. 226; Dougherty v. Welshans, 233 Pa. 121; Brock v. Atlantic Refining Company, 273 Pa. 76; Commonwealth v. Shoemaker, 14 Pa. Superior Ct. 194; Reed v. Mayo, 220 Mass. 565.

*Maurice W. Sloan,* and with him *Stanley B. Rice,* of *Sloan, White & Sloan,* for appellee.

OPINION BY GAWTHROP, J., March 1, 1929:

The bill of complaint filed alleged that the defendant is the owner in possession of certain premises lying between Allen's Lane and St. Georges Road (formerly called Gowen Avenue) on both sides of a certain public highway, known as Cherry Lane or Bechtel's Mill Road, which runs northwestwardly from Allen's Lane to St. Georges Road, in the Twenty-second Ward of the City of Philadelphia; that Cherry Lane is a public highway and was continuously and uninterruptedly used by the public as such for the purposes of travel for a period of more than twenty-one years prior to April 10, 1926, when the defendant suspended a heavy chain across it at its intersection with St. Georges Road, thereby preventing the public from using it as a public highway and resulting in an unlawful obstruction amounting to a public nuisance, and praying that the defendant be restrained from interfering with the use of the same by the public as a public highway.

The defendant filed an answer admitting that he is the owner in possession of the premises referred to, including the bed of the highway called Cherry Lane, denying that it is a public highway and that it was used by the public continuously and uninterruptedly for a period of twenty-one years; and averring that the public has no rights therein, and that, therefore,

the obstruction of the same by the defendant was not unlawful and did not amount to a public nuisance.

After the case was heard on bill, answer and proofs, the chancellor filed an adjudication holding that the Commonwealth failed to show that the public, generally, used Cherry Lane continuously, adversely and under a claim of right for a period of more than twenty-one years; that it is not a public street or highway; and dismissed the bill. After the dismissal of plaintiff's exceptions and the entry of a final decree, this appeal followed.

The validity of the decree turns on the fact that Cherry Lane is not a public highway.

Most of the material facts involved are not disputed. At the foot of Chestnut Hill the Cresheim Creek crosses Germantown Avenue and runs westwardly through a deep glen on its way to join the Wissahickon Creek near Devil's Pool. McCallum Street, an artery of travel to the north, crosses this glen over a bridge. At one time, more than one hundred years ago, there was a mill situate on Cresheim Creek about 1,200 or 1,500 feet west of the present McCallum Street Bridge. This mill was reached by roads from three directions. Access from the south was had over a road, part of which is now in controversy, which connected with a road now known as Allen's Lane running parallel with the glen at a distance of 1,200 feet. This road was known in the early part of the nineteenth century as Peter Bechtel's Mill Road. It ran over farm land northwestwardly from Allen's Lane in practically a straight line to the edge of the glen where it descended until it reached the dam breast near the mill. For a number of years the part of the road in controversy has been known as Cherry Lane. After the road was opened and in use Peter Bechtel purchased a number of parcels of land in the vicinity of the mill between it and Allen's Lane and at the time of his death owned a tract of approx-

imately fifty-three acres lying on both sides of the road and including the land now owned by the defendant. The descriptions in the conveyances to Peter Bechtel mention the road (Peter Bechtel's Mill Road) as a boundary of three of the tracts conveyed. In 1839 the heirs of Peter Bechtel conveyed the fifty-three acre tract to Peter Bechtel, his son. In this conveyance the bed of the road was included in the description of the tract, the lines running across the road being described as "crossing the said Peter Bechtel's Mill Road." The deeds from the successors in title of Peter Bechtel, the son, although including the road in the general lines of the description, expressly refer to it as a road. The deed to the defendant covering one of the tracts owned by him recites that it is subject to "an easement or right of way over said premises of Bechtel's Mill Road as said right of way may now exist." In the deed to defendant's immediate predecessor in title covering the other tract owned by the defendant on the other side of the road, the description contained the words "bounded ...... westward by present fence line on a certain street or alley known as Cherry Lane." The mill ceased operation forty or fifty years ago. In 1907 a street, then known as Gowen Avenue and now as St. Georges Road, was opened and placed upon the city plan. It ran westwardly from McCallum Street, parallel with Allen's Lane at a distance of about six hundred feet north therefrom. In the year 1882 Henry H. Houston acquired title to the fifty-three acre tract formerly belonging to Peter Bechtel. In 1891 he conveyed to Harlan Page a part thereof, containing in front on Allen's Lane about three hundred and thirty feet, and in 1898 the trustees of the Houston Estate conveyed to Page an adjoining tract on Allen's Lane containing in front three hundred and forty-one feet. These tracts ran northwardly to the center line of Gowen Avenue to a depth of approximately six hun-

dred and seventy-six feet. Although these convey-ances included the bed of Bechtel's Mill Road, they were made expressly subject to the easement or right of way over it "as the said right of way may now exist." From Allen's Lane back to the point where he erected a stable, Page built a macadam driveway in Cherry Lane. From the point where the macadam road ended down to the bottom of the hill at Gowen Avenue, he dumped ashes and cinders in the winter time for the purpose of filling up the holes due to the washing by the rains and improving the roadway to enable him to get to Gowen Avenue. About the year 1900 he erected at the Gowen Avenue end of the lane, posts with fence rails which could be let down if necessary. The chancellor found that in the decade beginning 1891 Bechtel's Mill Road north of Gowen Avenue became impassible and that during the owner-ship of Houston a fence was put across the road to the north of Gowen Avenue, and that at the present time few vestiges of the course of the road from Gowen Avenue into the glen remain. He found fur-ther that during Page's ownership of the lane foot-men and horsemen made use of it on their way north-ward to the woodland and glen below, and that in summer an occasional carriage drove in and in more recent years an automobile, but that the only vehicles of any sort that frequently entered the lane were those belonging to Page's family, or those having business on his place; that there was no outlet for vehicles at that time; that no witness suggested a right to use the road and that there is no evidence that any use made of it was adverse to Page's rights, and that the use which was made of it was not continuous but merely casual; that the city has never put it on its plans and that the Commonwealth failed to sustain the burden of showing that there had been at any time an adverse, continuous use of the lane under a claim of right for twenty-one years. As there is evidence to support

these findings of facts by the chancellor, they have the force and effect of the verdict of a jury and are binding upon the appellate court: Milford Boro. v. Burnett, 288 Pa. 434.

The chancellor decided the case against the plaintiff entirely on the ground that it failed to prove that the road became a public highway by prescription or operation of law, that is, by open, notorious, continuous and adverse user by the public for a period exceeding twenty-one years. It was and is the theory and contention of the plaintiff that under the admitted facts a well defined road or lane has existed for more than one hundred years in the present location of Cherry Lane; that it ran from Livezy's Mill Road (now Allen's Lane) to the mill operated by Bechtel; and that although its origin is not established, the references in the deeds, ancient and recent, of defendant's predecessors in title to a "road" are evidence that it was then a *public* highway, which, in the absence of countervailing proof, is conclusive against the defendant who claims title under said deeds. We have been unable to adopt the view that this is the legal effect of these admitted facts. While it has been held that the word "road" as used generally in our laws is uniformily applied to public roads, unless the diminutive "private" is added thereto, and it is synonymous with the term "highway" (Phillips v. C. & State Line Ry. Company, 247 Pa. 560; Respublica v. Arnold, 3 Yeates 417) we think it would be dangerous doctrine to hold that the mere fact that a description in a deed of conveyance, calls for a "road" as a boundary is conclusive of the fact that the road was then a public highway. A' deed naming as a boundary an alley which the grantor had formally dedicated to public use is not conclusive of the fact of dedication of the alley, nor acceptance by the public; the deed alone does not constitute the alley a public highway: Com. v. Llewellyn, 14 Pa. Superior Ct. 214.

Apart from statutory methods, a public highway may be created by prescription, and by dedication, express or implied, followed by acceptance: Milford Boro. v. Burnett, supra. As there is no proof that this road was created by statutory proceedings and the evidence supports the finding and conclusion of the chancellor that it did not become a public highway by prescription, the only question remaining for our determination is whether the evidence is sufficient to establish the fact that it became a public highway by implied dedication of the owner or owners of the land over which it passed, followed by acceptance by the public. It does not appear that the grantor in any of the deeds describing the road in question as a boundary was the owner of the ground occupied by the road at the date of the conveyance by him of land described as bounded by the road. Nor is there any evidence of a formal dedication of the road to public use by anyone. The only information as to the origin of the road, as disclosed by the evidence, is that before Peter Bechtel, the elder, acquired the land on which his mill stood, the road which later took his name was in existence and was then known as "Billmeyer's Mill Road." If the road was one which had been laid out by the grantor in a plan of his property and he had sold ground in accordance with that plan, that would amount to a dedication to public use; but even in that case there would have to be evidence of an acceptance of the dedication by the public before the road became a public road: Com. v. Llewellyn, supra. Dedication is a matter of intention. "When there is no opposing proof, long continued use by the public is evidence of an intent to dedicate, but it is by no means conclusive": Coward v. Llewellyn, 209 Pa. 582. It is true that when a public road has been expressly dedicated to public use by the owner and used by the public, it requires much less time to presume an acceptance by the public, than where there has been a mere

490

user without dedication: Com. v. Moorehead, 118 Pa. 344; Coward v. Llewellyn, supra; Com. v. Llewellyn, supra. But when implied dedication and public user are relied upon to establish a public highway, the use which will establish such a right must be defined, uniform, adverse and under claim of right and must have continued for twenty-one years: Com. v. Railroad Co., 135 Pa. 256, 271. Again the plaintiff is met by the finding of fact, properly supported, that there was no such use. It may well be, and we think it is probable, that Bechtel's Mill Road was a public highway at the date of the earliest deeds which were offered in evidence and when Peter Bechtel operated his mill, but the trouble with the plaintiff's case is that proof of that fact is lacking. The admitted fact that after the defendant acquired title to the land on both sides of Cherry Lane he joined in a petition (which was afterwards withdrawn) to the court of quarter sessions for the vacation of this part of the road, averring that "said lane or road has become useless as a highway," is strong evidence that he then regarded it as a public highway, although it does not amount to an estoppel. It is, of course, true that if the road was ever a public highway, it would not cease to be such because of abandonment or because of its physical condition, and no rights therein could be acquired by adverse possession: Lenhart v. Wright, 286 Pa. 351. But "where one sets up the existence of a public highway, the burden is on him to prove it by clear and convincing evidence": Milford Boro. v. Burnett, supra. Even if we deemed the evidence sufficient in law to meet that burden, the chancellor's findings of fact to the contrary, being supported by evidence, must stand. We cannot escape their binding force. We have considered all of the assignments of error and reached the conclusion that no reversible error was committed.

The decree is affirmed at appellant's costs.