## Commonwealth *v.* Bitzer, Appellant.

Argued September 28, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Ralph M. Barley,* with him *Paul A. Mueller,* for appellant.

*Arthur J. Diskin,* with him *Charles E. Thomas, John W. Beyer,* First Assistant District Attorney, and *John Milton Ranck,* District Attorney, for appellee.

OPINION BY RHODES, P. J., November 9, 1948:

Defendant was charged with a violation of sections 201 (b) and 1311 of the Public Utility Law of May 28, 1937, P. L. 1053, as amended. Section 201 (b) of the Act, 66 PS § 1121, makes it unlawful to render service as a public utility without a certificate of public convenience. Section 1311 of the Act, as amended by the Act of July 3, 1941, P. L. 267, 66 PS § 1501, provides

for the imposition of penalties for violations by a motor carrier operating as a public utility without a certificate of public convenience; and it makes the third and any subsequent offense a misdemeanor.

Defendant was indicted and convicted in the Court of Quarter Sessions of Lancaster County. Defendant's motion in arrest of judgment was overruled and the rule for new trial was discharged. He was sentenced to pay a fine of $200 and the costs of prosecution. Defendant has appealed to this Court.

At the trial it was stipulated that defendant had had two prior summary convictions for violations of the Public Utility Law, and further that he did not have a certificate of public convenience at the time of the alleged offense for which he was indicted. The Commonwealth's sole witness was an investigator for the Public Utility Commission. Through this witness it established that on June 16, 1947, two of defendant's trucks transported cattle from the Union Stock Yards, Lancaster, to a corral at Chadds Ford, Pennsylvania. One truck contained 36 head of cattle and the other truck 15 head. These cattle belonged to and were transported for one S. B. Davis. Defendant made a charge of 75 cents per head for hauling the cattle, which were delivered at a roadside corral containing a sign advertising cattle for sale and reading "S. B. Davis Cattle Company." The witness had previously observed sales of a large number of cattle from the Davis corral at Chadds Ford, and he testified that the S. B. Davis Cattle Company advertised cattle for sale in local publications.

It was defendant's contention that a certificate of public convenience was not necessary and that he was not guilty of violating the public utility law for the reason that his action in hauling these cattle came within a statutory exception, to wit, Article I, §2, par. (6) of the Public Utility Law of 1937, as last amended by the Acts of July 3, 1941, P. L. 267, § 1, and May 27, 1943, P. L. 709, § 1, 66 PS § 1102 (6), which excludes

from regulation ". . . (c) any owner or operator of a farm, transporting agricultural products from, or farm supplies to, such farm, or *any independent contractor* or coöperative agricultural association *hauling agricultural products* or farm supplies exclusively *for one or more owners or operators of farms*; . . ." (Italics supplied.)

In defense, defendant called several witnesses. Defendant himself did not take the stand because he knew nothing of the transaction involved in the case. Defendant's trucking business was in charge of Landis B. Martin, who testified that Davis told him prior to the hauling that the cattle were being bought for fattening on the Davis farm, and that defendant had no knowledge of the transaction. Davis, who was called by the defendant, testified that he was both a farmer and a cattle dealer; that he had four farms at Chadds Ford comprising some 700 acres in Delaware and Chester counties; that 160 acres were cultivated and most of the balance was used for grazing; that he owned his farm machinery which was used on the farms; that he also contracted with individuals to do some of his farming; that he produced quantities of hay and straw on the farm, most of which was used thereon and the balance sold. He also testified that the 51 head of cattle hauled by defendant were stockers or young steers of light weight which he had purchased at the Union Stock Yards; that he did not buy them to resell but to graze and fatten on his acreage; that the first of the cattle he sold on August 25, 1947, and that he still had some of them at the time of the trial on December 8, 1947. He further testified that he did not know defendant personally but that he had told defendant's manager, Landis B. Martin, that the cattle were not to be resold but grazed and fattened.

We think there was thus presented for the jury's consideration a conflict of evidence on the question of whether defendant had brought himself within the statu-

tory exception exempting ". . . any independent contractor . . . hauling agricultural products or farm supplies exclusively for one or more owners or operators of farms." The Commonwealth had the burden of establishing a violation of the Act and defendant's guilt beyond a reasonable doubt, as in all criminal prosecutions. *Com. v. Yeager,* 329 Pa. 81, 92, 93, 196 A. 827. When the Commonwealth presented a prima facie case by showing the rendering of a service as a public utility without a certificate of public convenience, the defendant then had the duty of going forward with the proof and establishing to the satisfaction of the jury, by a fair preponderance of the evidence, that he came within the excusable exception. *Com. v. Hefferman and Brodski,* 96 Pa. Superior Ct. 351, 355, 356; *Com. v. Bennett,* 110 Pa. Superior Ct. 303, 309, 168 A. 499; *Com. v. Harrison,* 137 Pa. Superior Ct. 279, 283, 284, 8 A. 2d 733.

We are of the opinion that a new trial must be granted because of reversible error in the charge of the court, and defendant's assignments of error in this respect will be sustained. The trial judge affirmed defendant's second, third, and fourth points for charge which were to the effect that if the cattle were hauled for Davis and if Davis were a farmer the verdict should be not guilty. However, throughout the charge, and especially in its qualified affirmance of defendant's fifth point, the trial judge told the jury that the guilt of defendant depended upon whether the cattle hauled for Davis were to be fed on the Davis farm or resold by him.

The trial judge charged as follows: "If you find from all the evidence that the defendant was not an independent contractor and did not haul these two truckloads of livestock to the farm of S. B. Davis to be fed on his farm, but that they were hauled to him for the purpose of resale by S. B. Davis, it is your duty to convict the defendant as he stands indicted. On the other hand, if you find from all the evidence that the defendant was an independent contractor and that he hauled this live-

stock to the farm of S. B. Davis to be fed on the farm as part of his farm and not for the purpose of resale, it thereupon becomes your duty to acquit the defendant of the charge in this indictment." The trial judge erroneously qualified his affirmance of defendant's 5th point, as follows: " 'No. 5. If you believe that the defendant, as an independent contractor, was hauling cattle for S. B. Davis, and if you believe S. B. Davis was the operator of a farm, your verdict must be Not Guilty.' That point is affirmed with the qualification, however, that you must, in addition, find that these cattle were to be fed on the farm of S. B. Davis." The trial judge thereupon further charged: "The intent of the Act is that a man can't go and purchase cattle and immediately resell them. The question is, did he, or not, purchase the cattle for immediate resale, or did he, or not, purchase them for the purpose of fattening them on his farm for resale later on, in the proper condition." Counsel for defendant excepted generally to the charge, and specifically to the qualified affirmance of defendant's fifth point.

Under the evidence, the principal factual question for the jury was whether or not defendant, as an independent contractor, in hauling for Davis was transporting, as agricultural products, the cattle, for the owner or operator of a farm. The fundamental error in the charge was in making defendant's guilt or innocence depend upon the believed intention of the shipper. The statute cannot be interpreted so as to make defendant's guilt dependent upon the state of mind of the shipper or his intention as to future use of the product transported. Defendant's guilt or innocence must be determined as of the time of the transportation. The sole issue on this phase of the case may be stated thus: Was defendant's hauling of the cattle as agricultural products for a farmer or for a cattle dealer? The intention of Davis as to whether he proposed to graze the cattle or resell them would not in itself determine defendant's guilt or innocence, but such intention in so far as it might have been

392

communicated to defendant directly or indirectly could be considered by the jury in determining whether the cattle were hauled by defendant for Davis as a farmer or as a cattle dealer. The criminal and penal provisions of the Public Utility Law here involved must be strictly construed and cannot be enlarged in scope by our courts so as to extend to the prejudice of a defendant to cases not covered with reasonable certainty by the language used. *Com. v. Weiss*, 142 Pa. Superior Ct. 524, 527, 528, 16 A. 2d 435. The confusion which was created by the erroneous instruction in the charge was not dissipated by the instructions which were proper.

Judgment is reversed, and a new trial is granted.