## Commonwealth v. Shaw

*Arthur J. Diskin*, for Commonwealth.
*Elmer D. O'Neill* and *T. A. Sampson*, for defendants.

Rowley, P. J., September 28, 1950.—This matter is before the court upon an appeal from a summary conviction.

The proceeding originated with a complaint filed by an agent of the Pennsylvania Public Utility Commission before a justice of the peace charging that defendant on October 29, 1949, did "unlawfully transport passengers in a motor vehicle as a motor carrier without a certificate of public convenience or a contract carrier permit authorizing the service performed from the Pennsylvania Public Utility Commission."

After hearing, the magistrate convicted defendant and imposed a fine of $50. Thereafter, defendant obtained an allocatur and the matter was heard de novo by the court.

The Act of May 28, 1937, P. L. 1053, requires a common carrier by motor vehicle to obtain a certificate of public convenience and a contract carrier by motor vehicle to obtain a permit from the Public Utility Commission, before offering or rendering service, under penalty of fine or imprisonment or both.

Defendant had obtained neither a certificate of public convenience nor the permit required for a contract carrier.

The Public Utility Law of May 28, 1937, supra, as last amended, 66 PS §1102, provided for exclusion from the statute of certain hauls, declaring that the term "common carrier by motor vehicle" shall not include:

"(b) transportation of school children in any motor vehicle owned by any school district, or operated under contract with any school district, which transportation is lawfully paid for by the school district from district funds."

The same amended statute declares that the term "contract carrier by motor vehicle" shall not include:

"(d) transportation of school children in any motor vehicle owned by any school district, or operated under contract with any school district, which transportation is lawfully paid for by the school district from district funds."

It is undisputed that on the evening of October 29, 1949, defendant, operating three motor buses, transported some 95 students of Grove City High School from Grove City to Sharpsville to attend a football game between the teams of Grove City High School and Sharpsville High School. The students transported included members of the football team, members of the high school band, and some trained cheer leaders.

The precise question is, whether defendant was relieved of the necessity of obtaining a certificate or permit from the Public Utility Commission by reason of the above-quoted statutory exceptions.

Upon the conclusion of the Commonwealth's evidence, defendant's counsel moved for dismissal of the case. The motion was not granted and defendant rested upon the testimony produced by the Commonwealth.

The following is a summary of the evidence:

Glenn A. Miller, a teacher in Grove City High School, was appointed faculty manager of athletics by the board of school directors. He was compensated by the district for this service in addition to his salary as teacher. His duties were to schedule games and make incidental arrangements. Mr. Miller contracted with defendant for transportation of the students here involved to Sharpsville on October 29th for the charge of $20 for each bus. In the preceding school year defendant had a written agreement with Mr. Miller, as faculty manager, to "transport the High School students to and from our different activities at (50¢) per mile".

For the conveyances of October 29th Miller prepared a voucher for $60 for three buses and delivered it to

Mr. Fleck, secretary-treasurer of the school district. Fleck paid the amount of the voucher to defendant. Fleck stated that he was of the opinion that he paid $43.50 for two buses; however, he had not looked up the voucher. The only compensation received by defendant was that paid to him by the secretary-treasurer of the school district.

Two of the students collected 50 cents each from 33 of the students who were transported. The amount of $16.50 thus collected was turned over to Mr. Miller, who delivered it to the treasurer of the school district. Money thus received by the treasurer "is not particularly identified with any activity. It goes into the general fund".

It will be observed that, in the instant situation, the circumstance which will exempt a carrier from the necessity of obtaining approval of the Public Utility Commission is that the transportation be by a vehicle "operated under contract with any school district, which transportation is lawfully paid for by the school district from district funds".

The indispensable elements are a contract with the school district and lawful payment of the transportation charges from district funds.

The Public School Code of March 10, 1949, P. L. 30, 24 PS §5-511, authorizes the board of school directors to manage, supervise and control athletics or games of any kind, including raising and disbursing funds for any or all such purposes, with power to employ or assign any school employe to serve in any capacity in connection with the activity.

Section 1361 of The School Code, supra, authorizes the board of school directors in any school district, out of the funds of the district, to provide free transportation of any resident pupil to and from any points in the Commonwealth for any purpose connected with the educational pursuits of the pupils.

The extent to which students will be encouraged and aided in athletic activities and other extracurricular pursuits allied to education is largely a matter within the discretion of the particular board of school directors.

That the board of directors had power to contract for transportation of the students here involved is undoubted. This the board might do either directly or through a designated agent. Defendant was warranted by attendant circumstances in presuming the authority of Miller to act for the board as well as the lawful authority of the secretary-treasurer to pay him. This is especially so in view of the nature of the instant proceeding. If this were an action to recover from the school district upon a contract claimed to have been made on its behalf, we should feel obliged to discuss at length certain matters to which we have made only brief reference.

Seemingly, the transportation has been challenged because two of the students collected 50 cents from each of 33 of the students transported. If payment of the transportation through the school treasurer was merely a colorable device adopted by the school authorities with knowledge of defendant, the carriage would have been in violation of law. However, the collections were undertaken by two students upon their own initiative, without suggestion from the school authorities or defendant. The proceeds were paid into the district treasury by an agent of the school district without designation as to source or use thereof. Furthermore, there is no evidence that defendant had any knowledge of the collections. His compensation was paid to him by the treasurer, from a general fund. It would be unduly harsh to require defendant to ascertain the original source of funds paid to him by the appropriate official of the school district. Indeed that would have been impossible. The treasurer himself was

unable to identify the source of the funds disbursed to defendant. (Defendant was nevertheless bound to know that unless he contracted with the school district the undertaking would be unlawful.)

The treasurer's testimony that he paid defendant $43.50 for two buses invited a contention that a third bus was paid with $16.50 collected from the students. Such a contention could be only supposititious. No just man would approve conviction of another upon such unsubstantial proof.

It will be noted that the treasurer was not positive that the check he referred to applied to the particular carriage nor certain as to the amount paid by him. He paid the amount of the voucher prepared by Mr. Miller; the latter positively stated that the voucher was drawn for three buses at $20 each. There is no testimony whatever that defendant received any compensation other than the check of the treasurer of the school district.

We are in full agreement with the principle advanced by the brief of the Commonwealth that in cases of this character the burden is not upon the Commonwealth to prove that the accused does not have a permit or certificate or that he is not within the exceptions set out in the statute. The rule is declared in Commonwealth v. Bitzer, 163 Pa. Superior Ct. 386:

"When the Commonwealth presented a prima facie case by showing the rendering of a service as a public utility without a certificate of public convenience, the defendant then had the duty of going forward with the proof and establishing to the satisfaction of the jury, by a fair preponderance of the evidence, that he came within the excusable exception."

Substantially the same rule is declared in Commonwealth v. Harrison, 137 Pa. Superior Ct. 279; Commonwealth v. Hefferman et al., 96 Pa. Superior Ct. 351, and Commonwealth v. Freed, 106 Pa. Superior Ct. 529.

In the instant case, if the Commonwealth had proved merely the transportation the burden would have passed to defendant of showing a permit or license or, lacking either of these, to prove that the particular transportation was excluded or excepted from the application of the statute.

The Commonwealth's evidence established the nature of the carriage, that it was performed under a contract between defendant and the representative of the school district, and that the compensation was paid by the secretary-treasurer of the school district from funds of the district.

In these circumstances there would have been little point in presenting testimony on behalf of defendant. It cannot be rationally argued that defendant is not entitled to the benefit of facts established by the evidence merely because the testimony came from witnesses called by the Commonwealth.

School districts are agencies of the Commonwealth to administer the constitutional duty imposed on the General Assembly by article X, sec. 11 of the Constitution of Pennsylvania, to maintain "a thorough and efficient system of public schools": Wilson et ux. v. Phila. School District et al., 328 Pa. 225.

While nominal defendant is an individual, there is here presented to us a clash of two agencies of the Commonwealth. It is regrettable that the rights and duties of these agencies were not clarified without resort to criminal prosecution, with consequent repercussions within the school.

In the brief filed by the Pennsylvania Bus Association it is argued that the funds held by the secretary-treasurer of the school district, from which instant defendant was paid, were not funds of the district. This conclusion rests upon a tortured construction of subsection (d) of the Act of 1949, P. L. 30, sec. 511, as amended, 24 PS §5-511, which provides, in part:

"It shall be lawful for any school or any class or any organization, club, society, or group thereof, to raise, expend, or hold funds, . . . in its own name and under its own management, . . .

"Such funds shall not be the funds of the school district but shall remain the property of the respective school class. . . ."

The amount collected in the instant matter was not held in its "own name" by any group but it was delivered to the treasurer of the school without designation as to source or limitation as to use.

### Judgment

And now, September 28, 1950, this matter came on for hearing upon appeal from a summary conviction, and same was heard by the court, whereupon for the reasons set forth in the foregoing opinion, defendant W. A. Shaw is adjudged not guilty and the County of Mercer is directed to pay the costs.