## Commonwealth v. Sleek

*Harold Kaminsky*, for appellant.

*Donald J. Letizia*, Assistant District Attorney, and *John M. Watkins*, Assistant Counsel, Pa. Public Utility Commission, for Commonwealth.

McDONALD, J., April 29, 1964.—This case is before the court upon appeal from the judgment and sentence of a justice of the peace in a summary criminal proceeding. Appellant, a truck owner possessing a certificate of public convenience issued by the Pennsylvania

Public Utility Commission, hereinafter referred to as Commission, was charged with a violation of the Public Utility Law of May 28, 1937, P. L. 1053, art. II, sec. 201(b) as amended, 66 PS §1121, and art. XIII, sec. 1311, as amended, 66 PS § 1501.

Appellant was issued a certificate "To transport, as a Class D carrier, building materials in bulk in dump trucks and coal between points in the counties of Cambria, Somerset, Indiana, Bedford, Clearfield and Westmoreland, provided no haul shall exceed a distance of twenty-five (25) miles from point of origin to point of destination." On January 24, 1964, an information was filed by an agent of the Commission charging that appellant had transported for compensation, scrap cast iron from Johnstown, Cambria County, to the Bolivar Foundry Company, Bolivar, Westmoreland County, without first having obtained a certificate of public convenience from the Commission authorizing such transportation.

At the hearing de novo, it was stipulated that he had hauled the aforesaid scrap cast iron which was to be ". . . melted by the Bolivar Foundry Company to make a variety of products. The principal items being counterweights for elevators, drainage frames and grates for parking areas, roof drains, cast iron washers used by steel fabrication and lumber yards, manholes and inlets for highway construction."

The question involved is whether the material comes within the purview of appellant's certificate.

The Commission contends the phrase "building materials in bulk" defines materials normally used in the construction of buildings or homes; that scrap cast iron is not such material. and therefore its transportation not being authorized by appellant's certificate was illegal. Appellant contends it was "building material in bulk," even though not in its form of final use; just as lumber, brick, stone, building construction steel, sand

and cement, which are authorized, and the interpretation the Commission advances is arbitrary and unreasonable.

No definition of the phrase, "building materials in bulk" has been called to our attention. The Commonwealth relies on the definition of similar type phraseology in certain decisions which have been cited in its brief.

In H. M. Skinner and Sons v. Mooney Bros. Trucking Co., 38 Pa. P. U. C. 118, "fire brick sleeves" were transported under a certificate which authorized the transportation of "building materials." This was held to be illegal and beyond the scope of the certificate. In that case, testimony of several witnesses indicates the fire brick sleeves were not building materials, but had a specialized use in the steel industry. Hence, a cease and desist order was issued by the Commission.

In O. K. Heilman, Inc. v. Bowser Transfer Co., 39 Pa. P. U. C. 658, respondent, who was cited upon complaint to the Commission, was authorized to transport "building construction materials." The complainant alleges he hauled carpenter, plumbers, electrical and other supplies indirectly related to building construction materials. In holding this was beyond the scope of the certificate, the Commission stated, at page 661:

". . . the phrase, 'building construction materials' in our authority certificates encompasses only those materials which are primarily and essentially designed and intended for use in basic building construction . . . Accordingly, unless it appears otherwise in both the application and also the supporting testimony, the phrase 'building construction materials' includes such items as lumber, brick, stone, building construction steel, sand and cement, but does not include such items as plumbing supplies, electric supplies, carpenter supplies . . . or other miscellaneous items indirectly related to building construction materials."

It will be noted the above cases did not define the precise phrase here in question. They were also decisions made after hearing on complaints to the Commission, rather than by summary criminal proceeding, The former is civil in nature, whereas the latter is criminal.

A summary proceeding in criminal cases, being in derogation of the common law, requires a strict construction of the statute upon which it is founded. The Commonwealth must prove the violation with clear and convincing evidence, sufficient to overcome the presumption of innocence which protects all those accused of crimes. This form of procedure is confined to petty offenses below the lowest grade of misdemeanor triable in the first instance in the court of quarter sessions, but notwithstanding, the accused is entitled to all safeguards afforded by the law, and the burden of proof is upon the Commonwealth: Commonwealth v. Bitzer, 163 Pa. Superior Ct. 386.

Appellant points out that the Heilman v. Bowser case interpreted a more restricted phrase, "building construction materials." There, the Commission decided such bulk items as sand, cement and stone were within the definition even though they are not in final form as used in the construction of buildings or homes. He argues, the phrase "building materials in bulk" is a broader term than that in the Bowser Certificate, and, therefore, transportation of materials in bulk, which are used not only in the construction of buildings and homes but also in the construction of highways and bridges, is authorized. He reasons that it, like the permitted items above, is building material, although not in form for final use.

The authorization of the certificate issued to appellant is rather broad. The phrase "building materials in bulk" may have different meanings depending upon whether the word "building" is a verb, noun or adjec-

tive. The Commission considers it a noun, whereas appellant contends it is an adjective. To compound the ambiguity, it may have been used as a verb. Being vague and imprecise, the reasonable doubt which arises must benefit appellant.

It does not strengthen the Commission's case to argue that the certificate was granted without hearing and therefore no testimony was offered to show the necessity for transportation of scrap iron. This reasoning aids appellant in a summary proceeding by disclosing there was no definition by way of limitation to guide him. It would be harsh use of the salutary regulatory powers granted the Commission if the limitations of a certificate, not initially made clear by express language or definition in published classifications, had to be delineated by successive prosecutions under the penal sections of the Public Utility Law.

While there is no doubt the Commission has the power to limit its certificate to accomplish regulation of competition, this limitation should be spelled out as clearly and precisely as possible in the language of the certificate. If there is doubt of the meaning of particular terms, it should be resolved by the civil procedures available rather than by recourse initially to summary criminal proceedings which place a heavier burden of proof upon the Commission. The latter procedure casts an aura of uncertainty over the scope of a certificate, when in fact the holder may in good faith believe he is operating within the authority granted. In those cases where bad faith is not evident, the former procedure will accomplish the end result of regulation justly and without harassment.

We are satisfied the very language of the certificate issued to appellant is so vague and indefinable that there is reasonable doubt appellant had exceeded the authority of his certificate and thereby violated the Public Utility Law.

Accordingly, the appeal must be sustained.

*Verdict*

Now, April 29, 1964, after hearing, we find appellant not guilty, and place the costs upon the county.