## Pennsylvania Public Utility Commission, Appellant, v. Stiely.

Argued November 28, 1967.   Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*William A. Goichman,* Assistant Counsel, with him *Joseph C. Bruno,* Chief Counsel, for Pennsylvania Public Utility Commission, appellant.

*Harold S. Shertz,* with him *Morgan, Lewis & Bockius,* for Pennsylvania Motor Truck Association, intervening appellant.

*Robert E. Woodside,* with him *R. J. Woodside,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, April 24, 1968:

The Pennsylvania Public Utility Commission, on its own motion, instituted a complaint against Wellington Stiely, charging the unauthorized operation of a motor vehicle as a common or contract carrier.   The Pennsyl-

vania Motor Truck Association was granted leave to intervene and the matter was submitted on briefs and oral argument, there being no factual disputes. The commission sustained the complaint and issued a cease and desist order against Stiely. An appeal to the Superior Court resulted in a reversal of the order of the commission and a dismissal of the complaint. *Stiely v. Pa. P.U.C.*, 209 Pa. Superior Ct. 440 (1967). On the commission's petition for reconsideration of our previous denial of its petition for the allowance of an appeal, we granted allocatur.

The facts of the case are brief and simple. Stiely admitted that he transported, by dump truck, 19,300 pounds of coarse, aggregate stone, for compensation, from the Faylor Lime and Stone Co., Washington Township, Dauphin County, to the premises of Gratz Fair, Inc., Borough of Gratz, Dauphin County. Stiely further admits that he is neither certificated as a common carrier nor the holder of a contract carrier's permit. The parties are agreed that the hauled material was to be used in the construction of a road on private property owned and operated by Gratz Fair, Inc.

As stated by the Superior Court, "The controlling issue before us involves an interpretation of definitions set forth in the Public Utility Law. Subsections (6) and (7) of Section 2 of the Act of May 28, 1937, P. L. 1053, as amended, 66 P.S. 1102, read in pertinent part as follows: '(6) "Common Carrier by Motor Vehicle" means any common carrier who or which holds out or undertakes the transportation of passengers or property, or both, or any class of passengers or property, between points within this Commonwealth by motor vehicle for compensation . . . but shall not include . . . (d) any person or corporation who or which uses, or furnishes for use, dump trucks for the transportation of ashes, rubbish, excavated and road construction ma-

terials. (7) "Contract Carrier by Motor Vehicle" means any person or corporation who or which provides or furnishes transportation of passengers or property, or both, or any class of passengers or property, between points within this Commonwealth by motor vehicle for compensation . . . but shall not include . . . (e) any person or corporation who or which uses, or furnishes for use, dump trucks for the transportation of ashes, rubbish, excavated or road construction materials'."

The commission adopts the position that the exemption or exception provided by the Act is limited to the transportation of materials used in the construction of *public* roads, and then only if the transportation is to the actual site of the public road construction project. We are in agreement with the Superior Court's rejection of this narrow interpretation. The opinion of the Superior Court correctly decides the question and we observe no proper cause for further amplification. The language of the statute is plain and unambiguous and there is no need to resort to any rules of construction to find a meaning not contained in that language.

The commission also argues that if the view which we adopt is correct, the Act is unconstitutional as special legislation. Stiely contends that the constitutionality question was not raised below and is, therefore, not properly before us. A reading of the commission's order, however, shows clearly that one of the reasons for its conclusion was the possibility that any other conclusion would create constitutional problems. We therefore conclude that the question was raised and considered below and requires resolution here.

The commission, without saying so, apparently reached the conclusion that an exclusion of dump trucks hauling road construction materials to public

road job sites was the limit of reasonable classification permissible under the Constitution. It contends that an exemption for a restricted class of vehicles for the transportation of a restricted class of materials to a restricted class of projects is constitutionally permissible, if its interpretation of the scope of the exemption is adopted, only because a public purpose, the construction and repair of public roads, is involved. The argument is that the view of the Superior Court, which we adopt, renders the exemption unconstitutional.

Where one seeks to overturn an Act of Assembly on constitutional grounds, he carries a heavy burden of overcoming the strong presumption of constitutionality. *L.J.W. Realty Corp. v. Philadelphia,* 390 Pa. 197, 134 A. 2d 878 (1957). Moreover, legislative enactments will not be declared constitutionally infirm unless they clearly, palpably and plainly violate the constitution and in such fashion as to leave us without doubt or hesitation. *Milk Control Commission v. Battista,* 413 Pa. 652, 198 A. 2d 840 (1964) ; *Daly v. Hemphill,* 411 Pa. 263, 191 A. 2d 835 (1963). A determination of what is a reasonable classification is a practical one based on experience. *Bargain City U.S.A., Inc. v. Dilworth,* 407 Pa. 129, 179 A. 2d 439 (1962).

We conclude that the heavy burden has not been met. The same considerations which make the exemption reasonable with respect to public roads, apply with equal force to all roads. Ashes, rubbish, excavated or road construction materials are all usually hauled over short distances, whether for public or private use or purposes. Private individuals and companies, as well as municipal subdivisions are likely to be dealing with numerous small operators in the transportation of such freight. The General Assembly could, based on experience, reasonably conclude that regulation of carriers of the enumerated items was not necessary to

the integrated transportation system which the Public Utility Code contemplates. In view of the fact that in the vast majority of cases the exempted items are transported in dump trucks, the Legislature could properly limit the exemption to that class of vehicles.

We conclude that the classification is reasonable—even though not limited to public roads. If anything, we believe that such a limitation would raise constitutional problems not present in the broader interpretation of the exemption which we have reached.

Order affirmed.

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

The majority proceeds upon the assumption that the meaning of the word "road" in the statute at issue can be decided as if this Court has never had occasion in the past to pass upon the meaning of this word. Although arguably unambiguous on its face, in other cases we have clearly held that the word "road" in fact means *public* road; in these cases the word was equally unambiguous yet we decided that the Legislature intended a different meaning, i.e., public road.

Of greatest aid in the resolution of this issue is the canon of statutory construction "[t]hat when a court of last resort has construed the language used in a law, the Legislature in subsequent laws on the same subject matter intend[s] the same construction to be placed upon such language." Statutory Construction Act, Act of May 28, 1937, P. L. 1019, §52, 46 P.S. §552(4). In *Respublica v. Arnold,* 3 Yeates 417 (Pa. 1802), defendant was indicted for a nuisance created by obstructing a water course in such a manner that a highway overflowed. Construing the word "road" as employed in the indictment, the Court examined various statutes in which road appeared and concluded: "The word *road,* used generally in our laws, is uni-

formly applied to public roads, unless where the *diminutive private* is added thereto. It is synonymous with the term *highway*." Id. at 421. (Emphasis in original.) The *Arnold* interpretation was expressly reaffirmed in *Phillips v. Connellsville and State Line Ry. Co.*, 247 Pa. 560, 93 Atl. 603 (1915), a case concerning the proper interpretation of statutory language which required that a railroad, when constructing its facilities over any "established road or way" do so in a manner as not to impede passage of persons or property.[1] I can find nothing in the Public Utility Law which in any way derogates from the conclusion that the Legislature did draft the "road construction materials" exception against a background of case law which dictated that the word "road" was in fact the equivalent of "public road" and therefore would hold that the commission's contention must prevail.[2]

---

[1] The *Arnold* case has been cited and followed in several other jurisdictions. See *Herzog v. Grosso*, 249 P. 2d 869 (Cal. Dist. Ct. App. 1952) ; *Smith v. Worn*, 93 Cal. 206, 28 Pac. 944 (1892) ; *Horner v. State*, 49 Md. 277 (1878) ; *Heiple v. City of East Portland*, 13 Ore. 97, 8 Pac. 907 (1885).

[2] The Superior Court, in support of its conclusion, relied upon the fact that subsection (12) of §2 of the Public Utility Law, Act of May 28, 1937, P. L. 1053, as amended, 66 P.S. §1102(12), defines the term "highway" as a way or place "open to the use of the public as a matter of right." It concluded that, if the Legislature intended to limit the "road construction materials" exception to public roads, the word "highway" would have been employed. However, the *Arnold* case expressly equates the words "road" and "highway." I can thus attach no significance to the legislative failure to employ "highway" when the same result is achieved by the use of "road."

The opinion below also finds as indicative of legislative intent the fact that "road" is an adjective rather than a noun. Although grammatically correct, this observation is not helpful. "Road" is used, according to the Superior Court, as an adjective "to describe a type of construction material" (209 Pa. Superior Ct. at 444, 229 A. 2d at 15)—and that type, under the *Arnold* case, is public road construction materials.

Furthermore, although there has been no Pennsylvania litigation concerning the interpretation of "road construction materials,"[3] the Oklahoma Supreme Court adopted as the proper interpretation of a similar exception for the transportation of "road material" in the Oklahoma statute a reading which accords with our view. See *Collins-Dietz-Morris Co. v. State Corporation Commission*, 154 Okla. 121, 128, 7 P. 2d 123, 131 (1931): " 'Road material,' as used in the act, refers to materials intended to be used for the construction, maintenance and repair of *public* highways, and the language used does not apply to materials that could be used for the construction, maintenance or repair of *public* highways but which, in fact, are intended to be used for other purposes."[4] (Emphasis supplied.)

The opinion below of the Superior Court and the brief of the appellee rely on two cases which assertedly support a reading of the phrase "road construction materials" which would permit a transportation of private road construction materials. The first, *Kister v. Reeser*, 98 Pa. 1 (1881), involved the meaning of the word "road" as used by a grantor to reserve a means of access

---

[3] Judge (now Justice) EAGEN in *Commonwealth v. Mangiacarne*, 55 Lack. Jur. 83 (1953) held that defendant, transporting sand to be used for road construction purposes from Wyoming Sand Co. to the stockpile of the Sproul Construction Co., was within the statutory exception. Appellee insists that this opinion supports his suggested interpretation. Judge EAGEN's one page opinion, however, contains no indication whether the sand was destined for public or private road construction and thus we fail to see how this opinion favors either party. This opinion would be helpful were we faced with the issue of whether the immediate destination of the shipment must be a public road construction site.

[4] The Missouri Supreme Court, construing an exception for "vehicles . . . transporting . . . road making machinery, or road materials", intimated that public road materials was the proper reading. See *Park Transportation Co. v. State Highway Commission*, 332 Mo. 592, 60 S.W. 2d 388 (1933).

to his property. The *Kister* Court did hold that "road" included a private way; the opinion, however, makes it clear that the Court was giving content to a conveyance, *not* a statute. Simply, the issue in *Kister* was whether the grantor intended that the owner of the private right of way was to have a fee or merely use of the way. In the resolution of this issue the Court in no manner indicated that any change was intended in the *Arnold* construction of the word "road" when used in a statute.[5]

The second, *Pennsylvania Public Utility Commission v. Bearoff Brothers, Inc.,* 41 Pa. P.U.C. 321 (1964), not only does not support the Superior Court's result but in fact is authority for the Commission's position. Bearoff Brothers were certified by the Commission "to transport . . . building and road construction materials." A complaint was filed by a competing carrier contending that Bearoff had transported dolomitic limestone to be used for purposes other than road construction and that this transportation was beyond the scope of Bearoff's certificate. In conformity with the suggestion contained in *Ferry v. Pennsylvania Public Utility Commission,* 192 Pa. Superior Ct. 331, 162 A. 2d 266 (1960), the commission examined the record of the original certification proceeding to determine the scope of the language "road construction materials" contained in the certificate. This original record disclosed testimony that Bearoff Brothers intended to transport road construction materials regardless of the use which a particular consignee had for them. The commission therefore held that Bearoff's transportation of limestone was within the scope of its certificate. Recognizing that it was

---

[5] *Commonwealth ex rel. v. Faux,* 95 Pa. Superior Ct. 482 (1929) expressly reaffirms the *Arnold* rule but states that this rule of construction does not usually apply to private conveyances.

confronted with the resolution of the scope of a certificate rather than the scope of a statutory exception, the commission stated (41 P.U.C. at 324-25): "At the original hearing . . . the applicant . . . and their shipper witnesses testified that they were applying for a certificate of public convenience in order to haul 'road construction materials' for others than the Commonwealth of Pennsylvania or its political subdivisions. They testified that the materials described as 'road construction materials' would be utilized in the construction of private parking lots, driveways and other private construction jobs and, *because of this, it was their intention to apply for a certificate of public convenience rather than to rely on the legislative exemption in Section 2(6)(d)* of the Public Utility Law. . . ." (Emphasis supplied.)

If the language "road construction materials" as employed in the Public Utility Code permitted transportation of materials for the construction of private roads, there would have been no necessity for Bearoff Brothers to obtain a certificate to transport materials for road construction. Thus, the commission was not confronted with the scope of the statutory phrase here at issue and the above quote indicates that it did acknowledge the limited scope of this statutory exception.[6]

My belief that the proper meaning of "road" is public road is reinforced by the fact that the statutory language at issue is contained in a section which should be classified as an exception to the commission's regulatory power. Since this is an exception, it must be strictly construed against the party (here Stiely) as-

---

[6] Under §51 of the Statutory Construction Act, Act of May 28, 1937, P. L. 1019, 46 P.S. §551(8) administrative interpretations can be employed as one of the indicia of legislative intent.

serting that he comes within the exception's coverage.[7] Litigation involving other allegedly non-regulated carriage has produced a doctrine that "exception" is the proper term to be applied to the phrase "road construction materials." See *Commonwealth v. Kozak,* 184 Pa. Superior Ct. 287, 133 A. 2d 584 (1957) ; *Commonwealth v. Bitzer,* 163 Pa. Superior Ct. 386, 62 A. 2d 108 (1948) ; *Allaman v. Pennsylvania Public Utility Commission,* 149 Pa. Superior Ct. 353, 27 A. 2d 516 (1942).[8]

As developed in cases concerning the interpretation of statutes imposing a tax, the procedure for classifying statutory language as either an exception or an exclusion appears to involve an initial determination of whether the taxpayer falls within the generic class to be taxed. If such is the case, then statutory provisions which remove certain individuals from the taxed class are deemed exceptions. See *Commonwealth v.*

---

[7] See, e.g., *Montgomery v. Martin,* 294 Pa. 25, 143 Atl. 505 (1928).

[8] These cases are an outgrowth of a series of Superior Court cases—*Commonwealth v. Harrison,* 137 Pa. Superior Ct. 279, 8 A. 2d 733 (1939) ; *Commonwealth v. Bennett,* 110 Pa. Superior Ct. 303, 168 Atl. 499 (1933) ; *Commonwealth v. Hefferman and Brodski,* 96 Pa. Superior Ct. 351 (1929)— concerning prosecutions for violation of the Liquor Code and securities acts. In each of these cases the court held that once the Commonwealth demonstrates a prima facie violation of the statute, defendant has the burden of showing that he comes within one of the statutory exceptions. Thus, under the facts here presented, once the commission demonstrated that Stiely was rendering contract or common carrier service without a certificate, appellee then had the burden of placing himself within a statutory exception. See *Commonwealth v. Shaw,* 73 Pa. D. & C. 339 (Q.S. Mercer Cty. 1950).

The appellee attaches great weight to the rule that penal statutes must be strictly construed against the Commonwealth and insists that, since Stiely could have been criminally prosecuted for failure to obtain a certificate, the statutory language must be construed against the Commission. However, this is not a criminal case, for the Commission issued only a cease and desist order.

*Sitkin's Junk Co.,* 412 Pa. 132, 194 A. 2d 199 (1963); *Fischer v. Pittsburgh,* 383 Pa. 138, 118 A. 2d 157 (1955). Moreover, an exclusion can exist even without any statutory mention of the excluded subject matter. For example, if a statute recited that a commission shall be created to regulate horse racing; dog tracks would be excluded from regulation even though not mentioned in the statutory language since dog tracks would not fall within the generic class which is subject to regulation. It is clear, however, that appellee does fall within the general class of carriers subject to commission regulation, i.e., those who undertake "the transportation of passengers or property . . . between points within this Commonwealth by motor vehicle for compensation. . . .": §2 of the Public Utility Law, Act of May 28, 1937, P. L. 1053, as amended, 66 P.S. §1102(6) and (7) (Supp. 1966). The phrase "road construction materials" should be classified as an exception to the general regulatory system and therefore the language at issue should be construed against appellee Stiely.

Additionally, House Bill 1933, introduced September 2, 1965, proposed to amend the definition of common and contract carriers so as to exempt "any person or corporation who or which uses, or furnishes for use, dump trucks for the transportation of ashes, rubbish, excavated waste materials, and road construction materials destined for the construction, maintenance or repair of any road, railroad, airport, facility, dam, walkway, driveway, or vehicular parking area." This bill did not pass, a bill which would clearly have permitted Stiely's transportation without first obtaining a certificate. We can consider legislation which was not enacted as indicative of legislative intent, see *McDowell v. Good Chevrolet-Cadillac, Inc.,* 397 Pa. 237, 245-46, 154 A. 2d 497, 501-02 (1959); the failure to pass this legislation would thus be a further indication

that the unamended statute does not permit transportation to a private road site without a commission certificate.

Finally, the majority shows little appreciation for the legislatively declared purpose[9] to establish an integrated regulatory scheme covering motor carrier transportation. This declaration of policy, combined with the all-inclusive statutory definition of a contract or common carrier,[10] indicates that this Court should not remove any segment of motor carriage from commission regulation without a clear legislative directive to do so. I can find no such directive in the phrase "road construction materials," and I therefore must dissent.

Mr. Justice EAGEN joins in this dissenting opinion.

---

[9] See §801 of the Public Utility Law, Act of May 28, 1937, P. L. 1053, 66 P.S. §1301. This declaration of policy may be considered in an attempt to divine legislative intent. See §54 of the Statutory Construction Act, Act of May 28, 1937, P. L. 1019, 46 P.S. §554; *Philadelphia Association of Wholesale Opticians v. Public Utility Commission*, 152 Pa. Superior Ct. 89, 30 A. 2d 712 (1943).

[10] Contract and common carriers are those who undertake "the transportation of passengers or property . . . between points within this Commonwealth by motor vehicle for compensation. . . ." §2 of the Public Utility Law, Act of May 28, 1937, P. L. 1053, as amended, 66 P.S. §1102(6) and (7) (Supp. 1967).